507 So.2d 829 (1987)
Nelson B. DETILLIER, Sr.
v.
SCAFCO, LTD.
No. 86-CA 720.
Court of Appeal of Louisiana, Fifth Circuit.
April 20, 1987.
Writ Denied July 1, 1987.
*830 Leonard J. Cline, Metairie, for plaintiff/appellee.
Curry & Blankenship, Kurt S. Blankenship, New Orleans, for defendant-appellant.
Before KLIEBERT, BOWES and GOTHARD, JJ.
GOTHARD, Judge.
Mr. Nelson Detillier sustained painful and permanent injuries when the guardrail on a portable scaffold broke causing him to fall 17 feet from it to the floor of the American Cyanamid Chemical plant while working for his employer, International Maintenance Corporation, on May 12, 1982. He brings suit for damages, alleging that his fall was due to the fault of Scafco, Ltd. which leased the scaffold to his employer. He alleges that Scafco was at fault in maintaining the scaffold in a dangerous and rotten condition, and in failing to inspect for such a rotten condition.
The defendant admitted that Mr. Detillier fell as alleged in his petition, but denied that it was the owner of the rotten guard rail and, in the alternative, pleaded the plaintiff's contributory negligence.
There was judgment below in plaintiff's favor in the sum of $1,009,752.87 and the defendant has appealed.

MOTION TO DISMISS
We initially ruled appellant to show cause why this appeal should not be dismissed for prematurity because the judgment denying appellant's motion for new trial was not in final form for the neglect of a decree, LSA-C.C.P. art. 1841. Appellee promptly obtained the necessary decree from the trial judge and supplemented it to the record on appeal. Thus, the prematurity defect would have been cured but for the appellant's subsequent motion to dismiss, which urged that the trial judge was without authority to enter judgment in this case having retired just prior to its rendition. The Louisiana Supreme Court has since authorized Judge Frank Zaccarria to re-render all necessary judgments for the purpose of final disposition of this case; he *831 did so, curing the jurisdictional defect.[1] This appeal is properly before us and will not be dismissed.

ON THE MERITS
After listening to the conflicting testimony of the witnesses, the trial court found that Scafco owned the rotten guard rail. The plaintiff's witness, Vance Robertson, who ordered the scaffold used by plaintiff's employer testified that all green scaffolding, the color of the rotten guard rail, was leased from Scafco. Scafco employee, William Russell, testified that all scaffolding comes from the manufacturer painted green, and doubted Scafco's ownership of the rotten guard rail simply based on color. The trial court indicated that it believed Robertson's testimony which was corroborated with other evidence. Plaintiff's expert witness, George Pappas, indicated that the original zinc primer was improperly applied to the rail which caused rusting and corrosion and further that a second coat of green paint was applied over the rusted surface. Mr. Pappas affirmed that the rust and corrosion was not discernible by visual inspection because a large part of the rust and corrosion was on the interior of the guardrail and not open to view. Also, the exterior rust and corrosion had been painted over and was no longer visible.
Based on these findings of fact, the trial court further determined that there had been an unreasonable risk of harm to Detillier posed by the rotten guard rail weakened by corrosion and rust, leased for the purpose of performing work at dangerous heights. He found that it is assumed by law that the lessor will inspect and keep such equipment in a sound condition. Accordingly, the trial court rendered judgment for the plaintiff and awarded damages.
While we affirm as correct the judgment of the trial court holding defendant liable for the plaintiff's tort damages, we do so on the basis of strict liability under LSA-C.C. art. 2317 discussed below.[2] We also revise the amount of the damages awarded discussed below.
On appeal defendant asserts ten errors on the part of the trial court which we summarize into three basic issues on appeal:
I. Tort liability
II. Damages
III. Denial of New Trial Motion

I. TORT LIABILITY
A party seeking damages under article 2317 must prove that he was injured by a defective thing which was in the care or custody of the defendant. Fonseca v. Marlin Marine Corp., 410 So.2d 674 (La.1981). It is clear that the guard rail was in a defective condition which permitted the plaintiff to fall thereby suffering injury. We also accept the finding of the trial court that Scafco was the owner of the defective guard rail. We are urged, however, to find, that regardless of ownership of the guard rail, that the leasing of it transferred legal responsibility for its care and condition from Scafco to Detillier's employer.
The guardianship or custody of a thing from which liability arises under article 2317 rests with the owner, until such time as it is transferred to another.[3]Jacobs v. Spinnakers, 474 So.2d 1019 (La. App. 5 Cir.1985), writ denied 478 So.2d 149. There being no evidence to the contrary, it is clear, that Scafco retained that "custody" *832 of the guard rail from which liability for its defects would arise.
Accordingly, we hold defendant strictly liable for the plaintiff's damages occasioned by the defective condition of the guard rail. LSA-C.C. art. 2317.
The defendant argues that Mr. Detillier is barred from recovering by his own fault, asserting his negligent errection of the scaffold without a top guard rail was the legal cause of the accident. In the absence of evidence of a duty requiring both a top rail and a mid rail for the safe erection of this scaffold platform, we hold Mr. Detillier was not guilty of contributory negligence.

II. DAMAGES
Appellant contends that the award of $1,009,752.87 to plaintiff for his damages is excessive and constituted clear abuse of discretion. The award was itemized in the trial judgment as follows:

Past medical expenses $ 18,818.87
Future medical expenses 27,000.00
Loss of past wages 152,952.00
Loss of future wages and/or
 earning capacity 540,982.00
Pain and suffering, mental
 anguish and distress, past
 present and future, loss of social
 and recreational activities and
 disability, past, present and
 future 270,000.00
 _____________
 TOTAL $1,009,752.87

Appellants contest all items of award except past medical expenses. Before considering the asserted errors, we first review the effects Detillier's injuries have had upon his life.
At the time of the accident Detillier was 42 years of age, an active and productive individual, a boilermaker by trade with twenty years experience. He worked regularly at his trade and put in many hours overtime. He had earned himself an excellent work record as one of the best and most experienced foreman boilermakers in the Local 37 Boilermaker's Union.
In addition to his work activities, Detillier hunted and fished with his family, and loved to go dancing with his wife and entertain friends. He is the father of four children. He completed only through the sixth grade, failing it twice, and has trouble with the English language.
Immediately following the 17 foot fall Detillier was dazed and in a semi-conscious state. He experienced pain in his neck and chest with difficulty in breathing. The ambulance took twenty minutes to arrive and then an additional forty minutes to the hospital. Plaintiff was then placed in intensive care. Testing was begun for internal damage as well as treatment for the visible injuries. Immediate effects of the accident were: concussion, a deep cut of the left elbow requiring stitching, blood in the urine, inability to breath from pain in the chest, arrhythmic heart beat (premature ventricular contractions), and pain in the neck, back and shoulder. Testing revealed probable contusions to the kidneys, interior chest walls, lungs, and heart.
Detillier was released into the care of Dr. Jack Winters, an orthopedic surgeon, for cervical-lumbar strain, and soft tissue injuries of the neck and the chest cartilage (which serve to attach the ribs to the sternum bone). Plaintiff saw Dr. Winters weekly until 1983, then decreased to monthly visits. Plaintiff's treatment plan included physical therapy from June 21, 1982 to December 12, 1983 with a total of sixty-six visits. Plaintiff experienced acute pain during these treatments although they provided some relief. Plaintiff was also required to wear a neck brace. He was treated with steroid injections and medication for pain and inflammation of the muscles. He also required medicine to sleep because of the pain and anti-depressants for the despair over the effect of his accident.
Follow-up diagnostic testing included another visit to the hospital in August 1982 and a painful myelogram, a two to three hour test which caused Detillier severe headaches and nausea. He was also put in traction. Detillier was seen by a cardiologist in order that Dr. Winters could rule out heart problems as a source of the continuing chest pain. He was found to have no cardiology problems.
*833 Subsequent problems arising from the fall included aggravation of a pre-existing, degenerative lumbar and cervical intervertebral disc disease, making it symptomatic, and scattered hypesthesia. Also Detillier required a third hospital visit in March 1983 for carpal tunnel surgery on his right hand to release a pinched nerve proximal to the neck injury and which left permanent nerve damage and a permanent ten percent disability in his hand.
Dr. Winters testified that his prognosis for Detillier on October 2, 1985 was that he is permanently unable to return to his former occupation, and he is restricted to sedentary work. Until October 1985 he had severe restriction of motion finally reduced to minimal. It is expected that his pain will be episodic and permanent, characterized by exacerbation and remission relating to the level and type of activity attempted. Consequently, he is under a permanent medical restriction and cannot do frequent climbing, stooping, or lifting. Any lifting attempted is restricted to ten to fifteen pounds. Detillier was seen for independent examination by neurosurgeon, Dr. David Jarrot, who testified that Detillier also has a residual anatomical, permanent partial impairment of ten percent. Future treatment will likely include physical therapy, steroid medication, and medication for pain.
Detillier testified that his pain although intermittant is persistent, and because of the pain his conjugal relationship with his wife has been affected and he can no longer sleep in the same bedroom with his wife. Plaintiff testified that his pain increases if he works too hard and when the weather changes. At these times he must wear a neck collar and a back brace. He testified that he no longer enjoys going dancing, or hunting and fishing because of the pain. Family members testified, corroborating his testimony.
Vocational rehabilitation counselor, Judith Linde, testified that because of Detillier's medical restrictions, limited education, and interest limitations, he is only quaified for a security guard type of job. Retraining is not appropriate. In addition, any employer would need to respect Detillier's present inability to work more than 20 to 30 hours per week.
We now turn to the quantum of the award, noting that the standard of review is whether the amount awarded constitutes a clear abuse of discretion. LSA-C.C. art. 2324.1; Reck v. Stevens, 373 So.2d 498 (La.1979).

General Damages ($270,000.)
From the totality of the medical evidence as well as the testimony of Detillier, his wife and family, and the vocational rehabilitation counselor, it appears that Detillier will never be able to return to his former life style. He continues to report pain and all evidence indicates that activities only increase Detillier's pain.
Considering the dramatic change in his lifestyle Detillier has experienced, as well as his three and one-half years of suffering, and projections that his pain will be permanent, the ten percent anatomical impairment, and ten percent disability of his hand, we cannot say the trial court abused its much discretion in awarding $270,000 for pain and suffering (past and future).

Future Medical Expenses ($27,000.00)
At the time of trial Dr. Winters testified that Detillier is still under his care and supervision. Further medical treatment, including periodic rehabilitation therapy (for stiffness, a result of his pain and consequent restriction in movement) is reasonably certain to follow. Given these facts and the record as a whole we cannot say the trial court abused its great discretion in awarding $27,000 for future medical expenses. Villavaso v. State Farm Mutual Automobile Ins. Co., 424 So.2d 536 (La. App. 4 Cir.1982).

Loss Of Income: (Past$152,952; Future  $540,982)
We should note that appellant moved to supplement the record with the actuarial computations of economist, Dr. J. Stuart Wood. He avers that by stipulation this report was submitted to the trial judge post trial and reflected in his reasons for judgment on the matter of loss of income. Plaintiff opposes the inclusion of this report *834 into the appellate record. Without supporting affidavits by either the trial judge below or the minute clerk, we deny the motion to supplement the record for the reason that appellate courts cannot receive evidence not introduced at the trial level. LSA-C.C.P. arts. 2088, 2132; Gowers v. Gour, 350 So.2d 935 (La.App. 2 Cir.1977) writ denied 352 So.2d 1046. In any case we find the actuarial computations used by plaintiff's economist, Dr. Melville Wolfson, reasonable, as did the trial court. We now turn to a review of the actual awards for lost income.
The past loss of $152,952 represents lost wages between the accident and date of trial, 3.4 years, as calculated by Dr. Wolfson. (The figure does not include lost fringe benefits.) Dr. Wolfson testified that he first derived an annual earnings base of $44,854 calculated from averaging of plaintiff's 1981 and 1982 tax returns. He then multiplied this figure by 3.4 years. Dr. Wolfson testified that although provided tax returns from 1978-1981, he did not use them explaining that plaintiff's income doubled between 1978 and 1982. He was provided with no income other than that reported on these tax returns.
We find these computations reasonable. However, we note that Detillier although still unable to return to permanent work testified that he did earn $700 from fencing work. Also, inasmuch as Detillier received two months wages (November 12, 1982 to January 23, 1983) from International Maintenance Corporation, we deduct $3738. These amounts were not reflected in Dr. Wolfson's computations, and we therefore deduct this from $152,952.
With regard to Mr. Detillier's future loss of income, Dr. Wolfson testified that he used the most conservative work life tables published by the U.S. Bureau of Labor Statistics in 1983 to derive plaintiff's work life of 15.9 years. The potential increase in earnings capacity of 6.32% was adjusted negatively by 1% for the effect of age at 55. Dr. Wolfson stated the 6.32% figure represented an average considering plaintiff's income actually increased at a much higher rate but reflecting considerations of recessionary adverse impact on his earnings. A mid term discount rate of 7.5% was used to discount to present value. (Fringe benefits of 10% were added in.)[4]
We find Wolfson's assumptions of 7.5% discount rate and 6.32% wage inflation increase are correct, fair, and conservative. However, we feel the amount equal to what plaintiff could earn at only a minimum wage job is unfair to defendant. Defendant introduced evidence that a security type job for which plaintiff is qualified would pay $5.25 per hour with fringe benefits. Accordingly, we decrease the award of future lost income from $540,982 to $322,623 to reflect such a rate of pay.

III. DENIAL OF NEW TRIAL
Appellant moved for a new trial on the ground that the judgment was clearly contrary to the law and the evidence, and on the ground of newly discovered evidence.
A review of the testimony and evidence available to this court does show that Detillier has proved by a preponderance of the evidence his claims against Scafco. With respect to Scafco's alleged newly discovered evidence, we also disagree. The new evidence consists of a videotape taken ten days after trial in which plaintiff is seen participating in the erection of a fence including the picking up of a ten pound piece of pipe.
Appellant argues this new evidence disputes the finding that plaintiff is totally and permanently disabled.
The trial judge denied the new trial motion for the reason that: "Mover also displayed a video recording taken of Mr. Detillier... engaged in physical activity ... The trial evidence did not suggest that he was permanently bedridden and the prohibition of certain activities, as suggested by *835 the medical testimony was not exceeded by the filmed depictions."
We find the trial judge was correct in denying the appellant's motion for a new trial. The evidence presented was simply not new and would not change the outcome of the trial. LSA-C.C.P. art. 1972.

DECREE:
For the foregoing reasons, we revise those portions of the judgment appealed from which award: past loss of income in the amount of $152,952 and decrease the award to $148,514; future loss of income in the amount of $540,982 and decrease the award to $332,623. In all other respects, the judgment appealed from is affirmed. The defendant-appellant is to pay all costs of these proceedings.
REVISED, AND AS REVISED, AFFIRMED.
NOTES
[1] See, 1974 La. Const. Art. 5, § 5(A).
[2] The trial court based Detillier's recovery on strict liability under LSA-C.C. art. 2322 dealing with ruin of owner's buildings; LSA-C.C. arts. 2692 and 2695 dealing with ruin of things leased; and LSA-R.S. 40:1672 dealing with the duty to erect safe scaffolding.

In addition, the trial court found that Scafco was negligent for breach of the duty to maintain a system to inspect for defective scaffolding. We pretermit discussion of these theories of recovery, finding Detillier's basis of recovery is under LSA-C.C. art. 2317.
[3] It is said that the underlying policy of article 2317 is to place the burden of loss, between an innocent victim and the innocent owner of the thing which causes injury, on the owner because he has the use and benefit of the thing. See Verlander, 25 Loy.L.Rev. 263, 275 (1979).
[4] The total amount of this award as stated by the trial judge is $540,982 but should be $560,110. No one has complained of this error.