**In re SHELL OIL REFINERY.**

**Robert ADAMS, Sr.**

v.

**SHELL OIL COMPANY.**

Nos. 88–1935, 88–2719.

United States District Court,
E.D. Louisiana,
New Orleans Division.

June 6, 1991.

John J. Cummings, III, Liaison Counsel Cummings, Cummings & Dudenhefer, New Orleans, La., for plaintiffs.

Thomas J. Wyllie, Adams and Reese, New Orleans, La., for Shell Oil Refinery.

James F. Holmes, Christovich & Kearney, New Orleans, La., for Brown & Root U.S.A., Inc.

ORDER AND REASONS

MENTZ, District Judge.

This matter is before the Court on the motion of the defendant, Brown & Root U.S.A., Inc., for summary judgment on the plaintiffs' claim of strict liability. Having reviewed the briefs and exhibits submitted by counsel, and the applicable law, the Court GRANTS the motion for the reason that there is no evidence by which a jury could properly find Brown & Root strictly liable.[1]

The plaintiffs brought this class action suit against Shell Oil Company and Brown & Root alleging damages arising from the May 5, 1988 explosion in the catalytic cracking unit (CCU) at Shell's refinery in

---

**1.** Although discovery is ongoing, the Court ordered the parties to complete discovery on the issue of Brown & Root's strict liability. At the

plaintiffs' request, the Court allowed several extensions so they could take the depositions they deemed necessary. Although the plaintiffs continue to object to having the motion heard at this time, they have not identified any other discovery which needs to be taken on this issue. *See* Fed.R.Civ.P. 56(f) (West 1991).

Norco, Louisiana. Brown & Root is a service contractor hired by Shell to provide labor whenever Shell is short of personnel. Typically, Brown & Root provides pipe fitters, boilermakers, and welders.

On March 12, 1988, Shell closed down a portion of the CCU for repairs.[2] Brown & Root performed work in the CCU during this period. On March 28, 1988 Shell's operations division returned the CCU back to service. On May 5, 1988, the CCU exploded. Discovery indicates that a pipe in the depropanizer unit of the CCU ruptured, releasing hydrocarbon gas, which then ignited and exploded.

The plaintiffs claim that Brown & Root is negligent because it decided not to repair or to postpone certain repairs to the F–32 furnace and the wet gas control panel, both of which are alleged sources for ignition of the escaped hydrocarbon gas.[3] The plaintiffs also claim that Brown & Root is strictly liable under Louisiana Civil Code article 2317 by virtue of its alleged control over the scheduling or postponement of critical repairs.

Article 2317 provides in pertinent part:

We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody.

La.Civ.Code Ann. art. 2317 (West 1979).[4] In order to recover under article 2317, a plaintiff must show: 1) that the thing which caused the injury was in the care or custody of the defendant; 2) that a vice or defect existed in the thing; and 3) that the vice or defect caused the injury. *See, e.g., Ainsworth v. Shell Oil Offshore, Inc.,* 829 F.2d 548, 551 (5th Cir.1987). Brown &

Root moved for summary judgment on the ground that it did not have custody of any part of the CCU.

Summary judgment is appropriate where there is no genuine issue of material fact and the mover is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c) (1991). The Supreme Court has stated that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that can properly be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

In this case, the plaintiffs would have the burden at trial to establish, among other things, that Brown & Root had custody of the allegedly defective thing. Custody under article 2317 involves the right of supervision, direction, and control over the thing itself. *See Grammer v. Patterson Services, Inc.,* 860 F.2d 639, 642 (5th Cir.1988).

While the plaintiffs do not contest that Shell owned, operated, and controlled the CCU, they contend that Shell's control was not exclusive, but was shared with Brown & Root insofar as Brown & Root's responsibility to make repairs and to control the scheduling of those repairs.

---

**2.** The parties dispute whether the closing down of the CCU in March, 1988 was a "shutdown" or a "turnaround." The dispute has no bearing on the present motion for summary judgment.

**3.** More specifically, the plaintiffs allege that Brown & Root failed to replace the site glasses on the F–32 furnace permitting the escaped hydrocarbon vapors to enter the furnace and ignite. In addition, they allege that Brown & Root failed to reconnect the purge system on the wet gas control panel permitting the electri-

cal circuitry in the panel to ignite the escaped hydrocarbon vapors.

**4.** Louisiana law also provides for strict liability of an owner of a building for damage caused by the building's ruin. *See* La.Civ.Code Ann. art. 2322 (West 1979). It does not appear that the plaintiffs have asserted a claim against Brown & Root under article 2322, but, in any event, there is no evidence that Brown & Root owned any part or component of the Norco refinery.

There is no written contract between Shell and Brown & Root governing their respective responsibilities or authority to control the CCU during Brown & Root's work. The uncontested deposition testimony is that Brown & Root carried out its work according to the following customary procedures: Shell prepared a Work List describing the general work particular equipment needed. Then, either Brown & Root or Shell would calculate the manpower needed to complete the jobs on the work list, but Shell actually decided how many men to use and when to use them, depending on how quickly Shell's operations department believed the work needed to be done. Shell's operations department prepared its equipment for Brown & Root to begin work. Brown & Root then would open the equipment for Shell's inspectors, who examined the equipment and prepared Field Inspection Reports giving detailed instructions about the work to be done on a particular piece of equipment. If Brown & Root's workers needed further explanation of a Field Inspection Report, they would ask the Shell inspector to clarify it. Brown & Root had no decision-making power to add, postpone, or delete work from the Work List or the Field Inspection Reports. Shell kept track of the progress of Brown & Root's work through a daily log kept by Shell's turnaround coordinator and daily progress meetings held with Shell's safety, inspections, operations, engineering, and turnaround departments, and Brown & Root's general foreman. With respect to the quality of the work, Shell's inspections department made periodic detailed inspections, as well as a final inspection to determine if Brown & Root performed the work correctly. Brown & Root had its own quality assurance program, but did not do any inspection work on behalf of Shell.

The Court has serious doubt that Brown & Root's alleged joint control over the scheduling or postponement of repairs, without any other evidence of control, can constitute article 2317 custody over the CCU or any portion of the CCU. But, assuming for purposes of this motion that it can, the uncontested evidence is that Brown & Root had no scheduling authority and performed repairs only in accordance with specific directions from Shell. Although Brown & Root advised Shell about the day-to-day availability of manpower, only Shell had authority to schedule work and make deletions or additions to the Work List or Field Inspection Reports. Shell's control over the scheduling of repairs was not shared with Brown & Root.

Based on the uncontested deposition testimony, the Court finds that the plaintiffs failed to raise any genuine issues of material fact in opposition to the present motion, and Brown & Root is entitled to summary judgment as matter of law. The evidence is that Shell continuously maintained sole direction and control over the CCU. There can be no genuine dispute that the CCU always remained in the sole custody of Shell. *See Detillier v. Safco, Ltd.*, 507 So.2d 829 (La.App. 5th Cir.1987) (the guardianship or custody of a thing from which liability arises under art. 2317 rests with the owner, until such time it is transferred to another.) Therefore, the Court finds as a matter of law that Brown & Root did not have custody of any part of the CCU for purposes of article 2317 liability.

Accordingly,

IT IS ORDERED that the Motion for Summary Judgment of Brown & Root U.S.A., Inc. on the Issue of Strict Liability is GRANTED, dismissing the plaintiffs' claim of strict liability.