## PAUL et al. v. NOLEN. *
### No. 15033.

Court of Appeal of Louisiana. Orleans.
March 9, 1936.

Gill & Simon, of New Orleans, for appellants.

Prowell & McBride, of New Orleans, for appellee.

JANVIER, Judge.

On September 13, 1933, Miss Willie D. Nolen purchased from Mrs. Viola Morse the premises bearing the municipal number 1722 Esplanade avenue in the city of New Orleans. At that time Mrs. Richard Gaudry was lessee of the building by virtue of a written lease which she had entered into with Mrs. Morse. Mr. and Mrs. Arthur Register (plaintiffs) were the occupants of one of the apartments in the

building, having subleased that apartment from Mrs. Gaudry.

On September 14th, the day after Miss Nolen bought the property, Mr. and Mrs. Register received physical injuries when the front stairway of the building collapsed as they were descending from the front porch to the ground below. Seeking recovery from Miss Nolen, the owner of the premises, they found their action upon article 2322 of the Civil Code which makes "every owner of a building answerable in damages to any person who is injured—either while rightfully inside or while outside of the building—by an accident resulting either from the owner's neglect to repair the building or from a vice or defect in its original construction." Klein v. Young, 163 La. 59, 111 So. 495, 497.

The defense, after the elimination of unimportant details and technicalities, is that Mrs. Gaudry, the lessee of the building, and the sublessor from whom plaintiffs had subleased their apartment, had, in the written contract of lease with the owner, agreed to undertake and be responsible for all necessary repairs, and had relieved the owner from all liability and responsibility resulting from any such defects, except "in case of positive neglect or failure to take action towards the remedying of such defects within reasonable time after having written notice from lessee of such defects, * * *" and that Miss Nolen, who purchased the property on the day prior to the accident and to whom the said lease with Mrs. Gaudry was assigned, could avail herself of the protection of the said clause in the said lease.

This defense, defendant contends, is especially authorized by Act No. 174 of 1932, which provides that: "The owners of buildings or premises which have been leased under a contract whereby the tenant or occupant assumes responsibility for the condition of the premises shall not be liable in damages for injury caused by any vice or defect therein to any tenant or occupant, nor to anyone in the building or on the premises by license of the tenant or occupant, unless the owner knew of such vice or defect, or should within reason have known thereof, or had received notice of such vice or defect and failed to remedy same within a reasonable time thereafter." Section 1.

Plaintiffs contend that for two reasons defendant may not avail herself of the protection of the said clause. They assert that the statute of 1932 is violative of article 1 (§ 2) of the Constitution of Louisiana and also of the Fifth and Fourteenth Amendments of the Constitution of the United States, in that, to quote from their brief, "it seeks to attempt to deprive plaintiffs of their property rights without due process of law by attempting to bar recovery to them under an alleged contract to which they were never parties."

They also maintain that, even if the act of 1932 is not repugnant to the Constitution of this state or of the United States, and even if the said stipulation may have been availed of by Mrs. Morse had she not sold the property and had she been the owner at the time of the accident, because of the said sale, the written lease was abrogated and annulled and is no longer in force. In support of this latter contention, they point out the fact that the lease containing the said stipulation had never been registered in the conveyance records of the parish of Orleans; the result being, so they (plaintiffs) maintain, that it was completely canceled and terminated by the sale of the said property.

In the district court there was judgment for defendant upholding the constitutionality of the statute, maintaining the defense based on the stipulation in the lease, and dismissing plaintiffs' suit. Plaintiffs have appealed.

Prior to the enactment of Act No. 174 of 1932, a stipulation such as that contained in the lease in question would have been effective to the extent of barring any claim which the tenant himself might have attempted to assert (Pecararo v. Grover, 5 La.App. 676), but it could not have been effective as a bar to an action by any one else. It could not have affected the rights of subtenants. Klein v. Young, supra. Nor could the rights of a guest of a tenant be cut off by such a stipulation. Even the wife of a tenant would not have been deprived, by the said stipulation, of the right to look to the owner for redress. Hero v. Hankins (C.C.A.) 247 F. 664. Therefore, if the act of 1932 is violative of, or repugnant to, either the Federal or to the State Constitution, such a provision could have no more effect as against a subtenant or a third person now than it could have had prior to the enactment of the statute.

It is said that the fundamental objection to the statute is that it permits parties to a lease to deprive third persons of

their property rights without due process of law. Our attention almost instinctively focuses itself upon the word "rights," and we recollect that it is well established that there is no vested or property right in a potential and not yet existent claim for damages. We bear in mind that at the time the lease contract is entered into no claim against the lessor nor against any one else has as yet come into existence. It is to that time that we must look in order to determine whether the law has permitted the parties to that contract to deprive others of their vested or property rights. When this lease was entered into, Mr. and Mrs. Register had not been injured. They had no right to a claim against any one.

Until the passage of Act No. 174 of 1932, the state of Louisiana, differently, we are advised, from all other states, had provided by law that in all cases of damage resulting from defective premises the responsibility should be placed upon the owner, and the courts had interpreted this to mean that, so far as third persons were concerned, this obligation could not, by contract, be shifted to the shoulders of the lessee. That was and remained the policy of the state until 1932. In that year the legislators, and they are vested with authority to declare what shall be the policy of the state, decided that there should be afforded to owners the right, under certain conditions, by contract, to transfer this liability to their lessees.

We see no fundamental reason which should prevent the Legislature from doing this. There is nothing basically wrong in permitting owners to make such contracts. There is nothing fundamentally wrong in permitting lessees to undertake the upkeep of the property at their risk, because, if so, then all of the other states of the Union have adopted a policy which is fundamentally and basically wrong.

It is for the lawmakers to determine whether it is best to permit recovery from the owner in the one case or from the tenant in the other.

No person has any vested right to sue either the one or the other. The right has been given by statute. What the law gives the law may take away. But in this case it has not taken it away; it has left the right and has merely permitted transfer of the obligation from one person to another.

In Colorado v. Johnson Iron Works, 146 La. 68, 83 So. 381, the constitutionality of Act No. 20 of 1914 (the original compensation law) was under attack on very much the same grounds as are presented here. It was contended by the widow of a deceased employee that, since the said act permitted an agreement between her husband and his employer which relegated her in case of his death by accident to a claim for compensation and deprived her of her right to claim damages under article 2315 of the Civil Code, she had been deprived of her property rights without due process of law. There the court said:

"Plaintiff contends that this does not have the effect of doing away with the remedy under article 2315 C.C., but that, if it does, said act cannot be understood as applying to the widow of the employee because between her and the employer there was no contractual relation, and therefore she cannot be held to have waived her right to sue under said article of the Code, and that if the said act is applicable to her case, and does supersede said article 2315, it is unconstitutional, because broader in these respects than its title, and is otherwise unconstitutional because it is a special law, and because it deprives her, without due process of law, of her right to sue under said article of the Code which right is her property. * * *

"As to this law being 'special,' within the intendment of article 48 of the Constitution, forbidding the enactment of special or local laws, it is not such, since it applies to employers and employees in general. As to its depriving plaintiff of property without due process of law, it does nothing of the kind, for two reasons: First, because formerly the right to sue for the death of a human being, which is the right plaintiff is seeking to exercise, did not exist in this state, but was given by statute, and, of course, the Legislature may repeal a statute enacted by itself, or supersede it by another statute; second, because the regulation of what recourse one person may have against another for personal injury is a matter entirely within legislative discretion."

That subtenants and others who have a potential interest need not be given notice of such a stipulation does not alter the situation in the slightest. Since such persons have no vested property rights to sue either the lessor or the lessee, they cannot complain that the law gives to the lessor and the lessee the right to agree between themselves just where

the liability shall be placed, nor can they complain that the law does not require that they be notified that such a contract has been made. The Compensation Law, which was under attack in Colorado v. Johnson Iron Works, supra, does not, and did not, require that the wife be notified when the employee and the employer agreed that their contract should be controlled by the Compensation Law.

 Concluding, then, that such a stipulation is authorized by the statute and that the statute is a valid enactment, we consider whether, since the contract of lease was not registered, the sale of the property put an end to the lease and in effect constituted Mrs. Gaudry, who had theretofore occupied the premises by virtue of a written lease, as merely a tenant by sufferance and without written contract. It is contended by plaintiffs that such is the result, and that therefore, since the written lease was canceled, the occupancy was not subject to the provisions of the said written lease, and particularly was not subject to that stipulation upon which the entire defense is predicated.

There is much argument over the question of whether such a lease may, along with the property itself, be transferred without the consent or without the knowledge of the lessee. We find it unnecessary to determine this question, because the evidence leaves no room for doubt that Mrs. Gaudry, the lessee, was fully aware of the fact that the property was about to be sold and not only made no protest, but agreed, in advance, that the sale might be made and that the lease should be continued in effect. She stated that she had talked to the agent about carrying out her lease with the new owner, and the district judge points out that the evidence of Mrs. Gaudry is that she had consented to the assignment of the lease.

When the sale was consummated, she remained as tenant without in any way attempting to contend that her lease had been terminated or that she had the right to terminate it. It may be that at the time of the sale, and even on the next day at the time of the accident, she had not become aware of the fact that the sale had actually been completed, but she later discovered that fact and that her lease had actually been assigned, and she thereafter made payments to the new owner, and thus, whatever her rights may originally have been, tacitly, to say the least, consented to the transfer of her lease to the new purchaser.

We conclude, therefore, that, when the lease was assigned, Mrs. Gaudry, whether she could have objected or not, made no objection and tacitly approved of the assignment. Thus occupancy under the new owner was occupancy under the written lease which contained the stipulation in question. Mrs. Gaudry was bound by it. Her tenants were likewise bound.

It is not contended that the defects were so apparent as to render defendant liable, regardless of her knowledge thereof. Nor is it contended that any notice was given to her of the defects.

The argument that the lease was not, in fact, assigned, and that the date on the assignment was fraudulently inserted later, does not appeal to us. The evidence convinces us that the assignment was made at the time the sale was consummated, which was prior to the time at which the accident occurred.

For the reasons given, it is ordered, adjudged, and decreed that the judgment appealed from be, and it is, affirmed at the cost of appellant.

Affirmed.

---

*Rehearing denied April 6, 1936.