GLADNEY, Judge.
Plaintiff conducts a printing business on leased premises known as 940-942 Louisiana Avenue, Shreveport, Louisiana. On the second floor of the same building the defendant operates the Rio Hotel subject to a similar lease from the same owners, which hotel has its entrance at 705 Snow Street. This action was brought against the defendant for water damage to finished printing products having an estimated value of $818.25. The lessors are not made parties to the suit.
For cause of action it is alleged the defendant assumed in writing the liability of the landlord for the defective condition of a sewer pipe which caused his loss and that defendant is guilty of negligence: (1) in failure to repair the plumbing; (2) in permitting guests in said hotel to allow water to run in excess of that which the sewer was carrying off; and (3) in permitting guests to obstruct and stop up the sewer system by inserting towels, handkerchiefs and other objects in same. Asserting the damages occurred from a cause located on the premises of defendant, plaintiff invokes the doctrine of res ipsa loquitur. By way of defense respondent disclaims any liability under its contract of lease, denies any independent acts of negligence, invokes likewise the doctrine of res ipsa loquitur, and pleads the contributory negligence of defendant, its employees and guests.
The court a quo overruled an exception of no cause or right of action and after trial rendered judgment in favor of plaintiff for $613.75. From this decree the defendant has prosecuted this appeal, which appellee has answered, asking the award be increased to $818.25.
On December 26, 1952, G. W. Robinson, an occupant of one of the first-floor premises of the building underneath the Rio Hotel, discovered water on the floor of his place of business and immediately notified plaintiff, who, upon investigation of his premises, found that water had come through a hole in the ceiling and ruined a quantity of printing which was stacked for delivery to his customers. After notifying Dr. Schnitt, one of the lessor owners of the building, Sam Giglio and Ronald Pruitt, two plumbers, came for the purpose of repairing the plumbing. An inspection of the premises of the Rio Hotel upstairs disclosed the fixtures there were not leaking and no water was found on the floor. The source of the trouble was located in a sewer pipe which was suspended four to twelve inches below the ceiling on the premises occupied by plaintiff. This pipe carried sewerage from defendant’s hotel and was part of and connected to a common system used also by tenants on the lower floor. The trouble-was found at an opening chiseled into the top surface of the sewer pipe. The opening-was covered by a piece of tin which had “rotted out”, as expressed by the witnesses. The jagged edges of the pipe and deteriorated tin cover caused waste material to stop the flow of sewerage at this point, resulting in back filling until the water overflowed somewhere, not exactly disclosed by the evidence, thence it spilled upon plaintiff’s finished printed products. The plumbing on the lower floor was not affected by the stoppage.
From the evidence so presented we infer the water which fell upon plaintiff’s premises and caused the damages came from the use of, but not necessarily from the improp *663 er use of, the facilities in the hotel. Plaintiff earnestly contends the stoppage was brought about by improper use of the upstairs facilities in that towels and objects of cloth were put into the commodes by guests of the hotel, but this charge is not made out by the evidence. Pruitt, who unstopped the line, did not determine the identity of the objects closing the sewerage and testified it could have been toilet tissue, a more likely conclusion in our opinion. Pruitt attributed the cause of stoppage to jagged edges of the broken pipe or to the rotting of the piece of tin which was placed over the hole in a crude sort of repair made some time before. The testimony did establish, however, that the location of this opening, being on top of the pipe, would not normally be detected except upon a close examination. Neither litigant knew of the existence of the opening prior to the occurrence on December 26, 1952, which brought it to light.
We are convinced plaintiff has failed to establish by a preponderance of the evidence actionable negligence on the part of defendant. We also find the proximate cause of the damage was the stoppage of the sewer line at a place not upon or within the premises of defendant. The sewer line which caused the trouble was a portion of a common system used by all of the tenants.
Liability for plaintiff’s damage, we surmise, cannot attach to defendant who, in the absence of an express covenant to the contrary, was under no responsibility to make repairs to a common sewer line situated entirely off her premises. Defendant’s written lease does not impose upon her such an obligation.
By stipulation it is agreed both plaintiff and defendant executed identical leases with the owner of the building which houses their two businesses. A copy of defendant’s contract in the record provides in part:
“It is further stipulated and agreed that Lessee shall pay promptly for all water and sewerage service, gas and electricity used on the leased premises, and keep all pipes and connections, plumbing and electrical fixtures, and installations in good repair at her own expense, and that she shall maintain the leased premises in good repair at her own expense, and that Lessee will make all repairs and improvements rendered necessary or required by any Federal, State or local law, or by any Governmental instrumentality, whether such action is required by statute or departmental order, and the Lessee further agrees to maintain the leased premises in good condition and repair during the term of this lease and make all necessary repairs to the said premises at her own expense and restore the premises to the Lessors at the termination of this lease in like good condition as that in which it is received, subject to the usual wear and tear brought about by a prudent use of the leased premises. Lessee hereby acknowledges that the leased premises áre received by her in first class condition.
“It is hereby expressly stipulated and agreed that Lessors shall at any reasonable time have access to the leased premises for the purpose of inspecting said premises as to its then existing state of repair and condition.
“It is further stipulated and agreed that Lessee expressly assumes the responsibility for the condition of the leased premises, and Lessors shall not be held liable for damage for injury to persons or property caused by any vice or defect or change of conditions in the leased premises, to any tenant or occupant or to any person or property in the building or on the premises by license of the tenant or occupant, or otherwise, unless the Lessors be notified in writing Of such vice or defect and shall have failed to remedy same within a reasonable time, if such defect involves a repair for which Lessors are responsible by law or under the terms of this lease; and Lessee assumes all liability and'binds herself to hold Lessors harmless from' any injury *664 or damage to any person or property upon the leased premises' or adjacent thereto, caused by reason of said Lessee’s failure to keep same in good condition and repair, and agrees- to hold Lessors harmless from any such claim or damage.”
Article 2695 of the LSA Civil Code of 1870 makes it obligatory for a lessor to maintain his property in a safe condition in the following words:
“The lessor guarantees the lessee against all the vices and defects of the tiling, which may prevent its being used even in case it should appear he knew nothing of the existence of such vices and defects, at the time the lease was made, and even if they have arisen since, provided they do hot arise from the fault of the lessee; and if any loss should result to the lessee from the vices and defects, the lessor shall be bound to indemnify him for the same.”
In Estes v. Aetna Casualty & Surety Co., La.App.1934, 157 So. 395, 399, Judge Janvier, after comparing the legal responsibility of a landlord under the common law and civil law systems, reviewed certain French writers’ comments on Article 1721 of the Code Civil Francais (Code Napoleon) which article corresponds to article 2695 of the LSA Civil Code of Louisiana, had this to say:
“But even if we had not before us the illumination which is thrown upon the subject by the French commentators, nor the significant action of the common-law courts in holding liable, for defects in common passageways, lessors who are not liable for injuries sustained on other parts of the property, we feel that we would independently have reached the conclusion to which we have come and which is that the lessor’s duty, which is defined in our Civil Code, extends to those parts of the property which are provided for the joint use of all the tenants, or for the joint use of one or more of the tenants and of the lessor himself.”
Until the passage of Act 174 of 1932, the State of Louisiana had by statute provided in all cases of damage resulting from defective premises the responsibility should be put upon the owner, and our courts had interpreted this to mean that so far as third persons were concerned, this obligation could not, by contract, be shifted to the shoulders of the lessee. Act 174 of 1932 has been incorporated within the Revised Statutes of this state as LSA-R.S. 9:3221, and reads:
“The owner of premises leased under a contract whereby the lessee assumes responsibility for their condition is not liable for injury caused by any defect therein to the lessee or anyone on the premises who derives his right to be thereon from the lessee, unless the owner knew or should have known of the defect or had received notice thereof and failed to remedy it within a reasonable time.”
 Thus, the owner, it can be inferred,, may contract away all liability for injury-caused by any defect therein to the lessee or anyone rightfully on the premises, unless the owner knew or should have known, of the defects or had received notice there-of and failed to remedy it within a reasonable time. Paul v. Nolen, La.App.1936, 166 So. 509.
In Thiel v. Kern, La.App.1948, 34 So.2d 296, 298, a tenant sued the owner for injuries resulting from an accident caused: by defective steps of an apartment building,, a portion of which she occupied as her residence. In a lease agreement binding upon, plaintiff, inter alia, it was stipulated:
“ ‘The Lessor shall not be liable for any damage either to persons or property, sustained by the Lessee or his. agents, clerks, servants or visitors, in--vitees, licensees, or by other persons. This provision shall apply especially-(but not exclusively) to damage caused: by termites, leaks in the roof, water,, snow, frost, steam, sewerage, electricity, illuminating gas, sewer gas or-odors, or by the bursting or leaking off *665 pipes or plumbing work, and whether such damage be caused or occasioned by any thing or circumstance above mentioned or referred to, or by any vice or defect or failure to repair the leased premises, or any portion thereof, or by any other thing or circumstance whether of a like or a wholly different nature.’ ”
Relying upon Estes v. Aetna Casualty & Surety Co., La.App.1934, 157 So. 395, supra, the court held the landlord responsible in •damages to the lessee, saying:
“The stairway being one used in common by all occupants of the upper apartments, the lessors necessarily retained domination and control of it, •and it would be absurd to say that under those circumstances the parties ■contemplated that the provisions of the lease bound the lessee to make repairs and rendered defendants harmless for •damages to a third person lawfully using the stairway injured as a result of •a vice or defect therein.”
It is clear from our finding that the common sewer pipe was not located •on defendant’s premises and further since there was no responsibility on either plaintiff or defendant to maintain the said pipe, neither plaintiff nor defendant may invoke the doctrine of res ipsa loquitur herein.
•Defendant has not re-urged in this •court her exception of no cause or right of action and we assume that it is not being pressed. Because of the conclusion herein reached, however, consideration of this exception is unnecessary.
From our findings which absolve defendant from responsibility for the damage sustained by plaintiff’s merchandise, the judgment from which appealed must be reversed and defendant’s suit is dismissed at his cost.