474 So.2d 1019 (1985)
Rocky JACOBS
v.
SPINNAKERS, Westlake Development Corp. and Westlake Development.
No. 85-CA-147.
Court of Appeal of Louisiana, Fifth Circuit.
July 29, 1985.
Rehearing Denied September 17, 1985.
Writ Denied November 15, 1985.
*1020 Harry E. Forst, New Orleans, for plaintiff-appellant.
John C. Tollefson, New Orleans, for defendant-appellee.
Before CHEHARDY, CURRAULT and DUFRESNE, JJ.
DUFRESNE, Judge.
This is an appeal by Rocky Jacobs, plaintiff-appellant, from a summary judgment in favor of Con-Mike, Inc., defendant-appellee, in a suit for injuries allegedly suffered by Jacobs when he fell through a rotten plank on a pier. Because we agree with the trial court that there is no genuine issue as to any material fact, and that mover is entitled to judgment as a matter of law, we affirm.
The premises on which Jacobs was allegedly injured consists of a rectangular building some 200 feet long and 100 feet wide, which is built out over the waters of Lake Pontchartrain. The building is divided into two business locations, one end being a *1021 restaurant and the other a cocktail lounge. The restaurant occupies about 2/3 of the building and the lounge the remainder. The lake side of the lounge consists of an open deck. Also, on the lake side, is a five foot wide pier which runs along the entire length of both the restaurant and the deck of the lounge. A stair goes from the deck down to the pier.
The building and pier are owned by Westlake Development Corp. At the time of this alleged incident, the restaurant area was leased to parties not before us, and the restaurant operation was shut down. The lounge and deck were leased to Robert Nims, who in turn had subleased the property to Con-Mike, Inc. which was operating a lounge known as "Spinnakers". The pier did not form a part of Nims' lease or Con-Mike's sub-lease, but the lessees of both the restaurant and lounge were permitted access to the pier.
There is no question that patrons of Spinnakers had access to the pier via the deck and stairs, and made use of it. Additionally, patrons often arrived at the lounge by boats which they docked along the pier. It is further established that employees of the lounge regularly went out on the pier to check for any problems that might arise among patrons on the pier. Finally, it is admitted that lounge employees occasionally cleaned and hosed down the pier.
Jacobs claims that on the night in question he was a patron at "Spinnakers", and had gone down on the pier to look at a sailboat docked there. He had proceeded to the end of the pier farthest from the lounge where he claims a rotten board gave way causing his leg to go through the flooring.
Jacobs brought suit against Westlake, the lessees of the restaurant space, Nims, and Con-Mike. Nims and Con-Mike were granted summary judgments on the apparent grounds that because they were not lessees of the pier, they could not be liable for injuries caused by defects in that structure.
Jacobs now appeals as to Con-Mike, alleging that there are disputes as to material facts which might show its liability either under the strict liability theory of La.Civ.Code art. 2317, or the negligence theory of art. 2315.
We note at the outset that under either Article 2317 or article 2315, the plaintiff bears the burden of proving that:
1) The property which caused the damage was in the custody of the defendant.
2) The property was defective because it had a condition that created an unreasonable risk of harm to persons on the premises, and;
3) The defect in the property was the cause in fact of the resulting injury. Kent v. Gulf States Utilities Co., 418 So.2d 493 (La.1982); Farr v. Montgomery Ward and Co. Inc. 430 So.2d 1141 (La.App. 1st Cir. 1983). Because the issue presented here is whether Con-Mike had "custody" of the pier, and because we conclude that it did not, the following analysis disposes of Jacobs' assertions of potential liability under either theory of the case.
In the case of Thiel v. Kern, 34 So.2d 296 (La.App.Orl.1948), the court held that a lessee is not responsible for injuries to persons legally on the premises when such injuries result from a defect existing in that part of the property, which does not come under the lease, and which is reserved by the lessor for the common use of all tenants of the property. We find no reason to depart from this rule here.
There is no question here that Con-Mike did not lease the pier or that all other tenants of the building had common use of it.
Jacobs argues to the contrary that, notwithstanding the lease and common usage factors there remain factual questions of whether Con-Mike exercised such control and direction over the pier, and derived such economic benefit from it, as to be considered in "custody" for purposes of *1022 liability. While we appreciate this argument we decline to adopt it.
In the case of Loescher v. Parr, 324 So.2d 441, 449, n. 7 (La.1975), Justice Tate quoted with approval the following language on the question of what constitutes "custody" for purposes of liability:
"[T]he things in one's care are those things to which one bears such a relationship as to have the right of direction and control over them, and to draw some kind of benefit from them. This relationship will ordinarily be associated with ownership, but the guardianship will also belong to the bailee, the lessee, the usufructuary, the borrower for use and the repairmen, among others. It will not belong to the agent or the mandatory, the employee or the servant, or to anyone else for whom there is a responsible principal. The owner may transfer the guardianship by transferring the thing to another who will bear such a relationship to the thing as to himself have the care of it. He may also lose the care of this thing, principally by the theft of the thing."
In Verlander, We are Responsible ..., 2 Tulane Civil Law Forum, No. 2, p. 64 (1974).
Our appreciation of this language is that the guardianship of a thing from which liability arises rests with the owner, until such time as it is transferred to another.
It is also evident that either the owner or the transferee has the guardianship, and that it cannot lie in both simultaneously. It has either been transferred or it has not. As we have already determined that the lease and common usage arrangement show conclusively that Westlake retained responsibility for the pier, it is equally clear that they retained that "custody" of it from which liability for its defects would arise.
For the foregoing reasons, the judgment of the trial court is hereby affirmed.
AFFIRMED.