634 So.2d 1372 (1994)
Janet GUILLORY, Born Hebert, Plaintiff-Appellant,
v.
Theresa L. FOSTER, et al., Defendants-Appellees.
No. 93-996.
Court of Appeal of Louisiana, Third Circuit.
March 2, 1994.
*1373 Phillip Michael Maneille, Lake Charles, for Janet Guillory Born Hebert.
Alvis J. Roche, Lake Charles, for Theresa Foster et al.
Scotty G. Rozas, Lake Charles, for Harrison O. Leach.
Rick J. Norman, Lake Charles, for Audubon Ins. Co. and T. Dumatriat.
Before WOODARD and DECUIR, JJ., and BERTRAND[*], J. Pro Tem.
DECUIR, Judge.
This case arises out of a trip and fall accident which occurred in a leased building. At issue is the liability of the lessor under various theories and the effect of certain lease provisions. The trial court found that neither the lessor nor the sublessor was liable to the plaintiff. We affirm.

FACTS
The events giving rise to this case occurred in "Good Time Charlie's Lounge", a bar located in Lake Charles, Louisiana. The lounge was operated by Good Time Charlie's, Inc., a corporation owned and operated by Sam and Theresa Foster. The Fosters occupied the lounge under a sublease from Harrison Leach. Leach was the lessee of Thelma Dumatrait, the owner of the building.
On December 24, 1985, Janet Guillory, while dancing on the lounge dance floor, tripped on an elevated strip of wood and was injured. The board had been affixed to the floor by the Fosters in anticipation of building a rail to separate the dancers from the band. Neither Leach nor Dumatrait was aware that the Fosters had attached the board to the dance floor.
Guillory brought this suit seeking damages. The trial court entered judgment for Guillory against Good Time Charlie's, Inc. and for the defendants Dumatrait, her insurer, and Leach against Guillory. Guillory brought this appeal.

*1374 LAW AND DISCUSSION

Guillory's first assignment alleges that the trial court erred in finding that Louisiana Civil Code Article 2004 did not apply to the leases in this case. Specifically, she argues that paragraphs 8 and 9 of both the original and sublease are unlawful advance limitations on liability held to be null in Ramirez v. Fair Grounds Corp., 575 So.2d 811 (La.1991). We disagree.
This issue was ably addressed by the trial court in its reasons for judgment and, therefore, we adopt them as our own.
Since Mrs. Dumatrait is the owner who leased her premises she is entitled to the benefits of La.R.S. 9:3221. That statute reads as follows:
"The owner of premises leased under a contract whereby the lessee assumes responsibility for their condition is not liable for injury caused by any defect therein to the lessee or anyone on the premises who derives his right to be thereon from the lessee, unless the owner knew or should have known of the defect or had received notice thereof and failed to remedy it within a reasonable time."
Articles 8 and 9 of the lease between Dumatrait and Leach provide the same benefit to the lessor as was litigated in Standard Office Supply Company v. Stonewall Investment Company, 267 So.2d 768, 769 (La.App. 2d Cir.1972). In that case, the court held that R.S. 9:3221 "is effective to exempt the lessor from liability for damages resulting from the condition of the leased premises..." This holding was in spite of the fact that the lease did not contain the language of the statute which includes the language "the lessee assumes responsibility ..." In Gilliam v. Lumberman's Mutual Casualty Company, 240 La. 697, 124 So.2d 913, 916 (1960) the Louisiana Supreme Court held that the statute
"was undoubtedly designed to relieve the owner of some of the burdens imposed on him by law in cases where he has given dominion or control of his premises to a tenant under a lease, for the Act permits the owner to transfer his legal liability by contract to his lessee insofar as it may pertain to injuries received by third persons who come on the property by license or invitation of the lessee."
In the instant case, it is apparent to the court that Mrs. Dumatrait had no actual knowledge of the board strip, since she had not in fact been on the premises since the board strip had been affixed to the floor. The terms of the lease were such that
"no alterations, changes or additions shall be made on or to the leased premises by the Lessee without Lessor's consent in writing being first obtained ..." (Article 14 of the lease and Article 14 of the sub-lease).
The placing of the board strip on the floor by the sub-lessee was a violation not only of the original lease but the sublease as well. Neither Mrs. Dumatrait nor Mr. Leach ever knew about or granted permission for the alteration which the board strip nailed to the dance floor represented. Therefore, the court is of the opinion that La.R.S. 9:3221 relieves the owner, Mrs. Dumatrait, of liability to the plaintiff, Ms. Guillory, on account of the board strip.
Plaintiff argues that Ramirez v. Fair Grounds Corp., supra, nullifies any clause that "in advance, excludes or limits the liability of one party for causing physical injury to the other party." Louisiana Civil Code Article 2004. This court believes that if Article 2004 had been intended to negate La.R.S. 9:3221, the latter statute would have been repealed in the act which enacted the former statute. State v. Pemble, 42 La.Ann. 74, 7 So. 65, 66 (1890). Further, the constitutionality and rationale of La.R.S. 9:3221 have been confirmed in Louisiana law. Tassin v. Slidell Mini-Storage, Inc., 396 So.2d 1261, 1264 (La.1981); Terrenova v. Feldner, 28 So.2d 287 (Orl.1946); and Paul v. Nolen, 166 So. 509 (Orl.1936).
The position of the trial court is further buttressed by the ruling of the Louisiana Supreme Court in Daigle v. Clemco Industries, 613 So.2d 619 (La.1993). In that case, Justice Dennis writing for the majority noted that:
"Civil Code article 2004 provides that any contractual clause is null that, in advance, *1375 excludes or limits the liability of one party for intentional or gross fault that causes damage to the other; or that, in advance, excludes or limits the liability of one party for causing physical injury to the other party. The clear implication of these provisions, when considered in pari materia, is that a compromise or contractual clause is not null because it excludes or limits liability in advance except when a party to the contract relinquishes future rights of action arising from his or her physical injury or from the intentional or gross fault of another party. See Ramirez v. Fair Grounds Corp., 575 So.2d 811 (La.1991)."
Accordingly, this assignment lacks merit.
Guillory next argues that the trial court erred in finding that Dumatrait was not liable under La.Civil Code Article 2317 or 2322. Again, we disagree and adopt the reasons ably articulated by the trial court.
The plaintiff argues that Mrs. Dumatrait, the owner of the premises, is liable as the custodian of the premises and in particular the board strip. It is provided in Civil Code Article 2317 that one can be liable for "things which we have in our custody." "Custody" is defined, not in terms of ownership, but rather in terms of supervision and control. Colleps v. State Farm General Ins. Co., 446 So.2d 988, 989 (La.App. 3rd Cir. 1984); Myers v. Ford Motor Co., 486 So.2d 1030, 1039 (La.App. 2d Cir.1986). The relationship that creates the exposure to liability "will ordinarily be associated with ownership, but the guardianship will also belong to the... lessee ..." Loescher v. Parr, 324 So.2d 441, 449, note 7 (La.1975). In Jacobs v. Spinnakers, 474 So.2d 1019, 1022 (La.App. 5th Cir.1985), the court commented that "the guardianship of a thing from which liability arises rests with the owner, until such time as it is transferred to another ..." The plaintiff was meticulous in taking evidence as to the terms of the lease and the lessor's understanding of the lease. This was evidently an effort to demonstrate that the lessor owned, could control, and therefore had custody of the premises to the degree necessary to establish liability for the existence of the board strip. In other words, the plaintiff tried to show that custody had not been transferred from the owner to the lessee. However, a review of the lease from Dumatrait to Leach does not provide any participation in current maintenance of the leased premises save and except for an obligation on the lessor to repair the roof. Manifestly, the roof was not a part of the circumstances of this unfortunate accident. The privilege of use of the pertinent portions of the building and the obligation to properly maintain it belonged to the lessee, not the lessor. "Garde" is largely a question of fact, not law. [Doughty v. Insured Lloyds Ins. Co., 576 So.2d 461 (La.1991)]; Coleman v. Otis Elevator, 582 So.2d 341, 343 (La.App. 4th Cir. 1991). It is also appropriate to note that "custody" or "garde" of a thing cannot lie in both an owner and a lessee simultaneously. Either one or the other, but not both, has the custody or garde of the thing. Jacobs v. Spinnakers, supra. Since the owner/lessor in fact had not been on the premises, which non-appearance was not inconsistent with the provisions of the lease, the sublessee had solely occupied and maintained the leased premises. Accordingly, unless the exception pertaining to structural defects obtains, the court does not feel that there was any custody in the owner/lessor in a manner which would create liability on the owner/lessor.
The exception for structural defects is described in Ross v. LaCoste de Monterville,502 So.2d 1026, 1029 (La.1987). There, the Louisiana Supreme Court held that custody or garde can follow the owner, as opposed to the lessee or other possessor, of a thing if one is dealing with "structural defects ..." See also Lucas v. DeVille, 526 So.2d 1264, 1267 (La.App. 3rd Cir.1988). This phrase indicates a distinction between those matters which are inherent to the thing and those matters arising out of possession of the thing. In Ross v. LaCoste de Monterville, supra, p. 1928, the "structural defect" was a hole worn in an aluminum ladder by a steel rivet. A defect which would not be structural would be the spilling of a soda on the floor. Moore v. Lapalco Square, 514 So.2d 215, 216 (La.App. 5th Cir.1987). Justice Dennis described the exception at Ross v. LaCoste de Monterville, supra, p. 1032, as follows:

*1376 "... we conclude than an owner of a thing who transfers its possession, but not its ownership to another, continues to have the garde of its structure and is obliged to protect others from damage caused by structural defects arising before the transfer. As we have previously observed, the principle of legal fault or strict liability underlying Civil Code Articles 2317-22 is analogous to the principle of strict products liability ... Although the manufacturer usually does not have custody of the product when the injury occurs, in order for strict liability to arise, the plaintiff must prove that the product's unreasonably dangerous condition existed at the time the product left the control of the manufacturer, and that the product reached the user in substantially that same defective condition. As between the innocent consumer of a product and the manufacturer, the manufacturer is in the better position to detect, evaluate and take steps to eliminate an unreasonable risk of harm arising in his product before it leaves his control. Likewise, the owner of a thing is in a better position than the innocent victim to guard against the unreasonable risks of structural defects in the thing he owns which arise before he transfers possession of it to another." (Emphasis added.)
This court does not believe the board strip constituted a "structural" defect. It was not necessary for the proper functioning of the premises. It was not even a completed fixture. It represented only a portion of the improvement originally intended. In that sense it served no significant purpose.
From the quotation in the second preceding paragraph, it is apparent that Justice Dennis places great emphasis on the liability for the owner only for the defects in the thing in question at the time the possession leaves the owner and is delivered to the lessee. In the instant situation, it is clear that the board strip was not in place at the time possession of the premises was transferred by Mrs. Dumatrait to Mr. Leach. Accordingly, this court believes and so finds that the board strip is neither "structural" nor had it been placed on the premises before the premises were transferred by Mrs. Dumatrait.
The plaintiff also argues that La.Civil Code Article 2322 causes Mrs. Dumatrait as owner of the leased premises to be liable for the plaintiff's injuries. Article 2322, however, creates liability when there is damage flowing from the ruin of a building. "Ruin" comes from a Latin root meaning "falling down." Quintanilla v. Chateau Louisiane, Inc., [392 F.Supp. 510 (E.D.La.1975)]. The word "ruin" has been described as meaning the "fall or collapse of a more or less substantial component of the structure." Sumner v. Foremost Ins. Co., 417 So.2d 1327, 1332 (La.App. 3rd Cir.1982). Since the offending board strip was not a ruin, but rather was the first step in an improvement to the premises, it cannot be said that Article 2322 applies. Additionally, application of this Article depends on the defect being a part of the "original" construction, which obviously this board strip was not. Accordingly, there is not liability for Mrs. Dumatrait under the provisions of this Article. Since Article 660 of the Civil Code is the same in substance as this Article, it is not available for plaintiff's assistance either. Since neither Civil Code Articles 660 or 2322 apply, the plaintiff's reliance on Marcantel v. Karam, 601 So.2d 1 (La.App. 3rd Cir.1992) is misplaced.
Accordingly, we find that neither Mrs. Dumatrait, nor her insurer, Audubon, are liable to Guillory.
Guillory's remaining assignments allege that the reasoning above is inapplicable because the sublease was confected in violation of the original lease and, therefore, is without effect. She argues that this makes the Fosters precarious possessors not capable of having garde or custody of the premises. We disagree.
A prohibition in a lease against a tenant subleasing unless the lessor yields his consent in writing, is clearly a stipulation in the interest of the lessor alone. Moore v. Bannister, 269 So.2d 291 (La.App. 4th Cir.1972). As such, the provision gives the lessor certain rights under the lease which he may or may not exercise at his discretion. In the instant case, Dumatrait was unaware of *1377 Leach's violation of the lease between them and had taken no action to enforce her lease provision. The plaintiff has no right to challenge the validity of the sublease between Leach and the Fosters. It is strictly a matter between Dumatrait and Leach. Accordingly, Guillory's arguments lack merit.
Because we find no error in the trial court's ruling on liability, appellee's assignments regarding the trial court's findings relating to defects on the premises and quantum are moot.
For the foregoing reasons the judgment of the trial court is affirmed. All costs are taxed to plaintiff-appellant, Janet Guillory.
Affirmed.
NOTES
[*] Honorable Lucien C. Bertrand participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.