712 So.2d 238 (1998)
Darlene TANNEHILL
v.
JOGUYRO, INC., Alliance Insurance Group and Roy L. Larocca.
No. 97-CA-571.
Court of Appeal of Louisiana, Fifth Circuit.
April 9, 1998.
*240 Howard L. Murphy, New Orleans, for defendants-appellants Douglas R. Elliott Deutsch, Kerrigan & Stiles, L.L.P.
Philip C. Ciaccio, Jr., New Orleans, for plaintiff-appellee.
Before GRISBAUM, C.J., and BOWES and CANNELLA, JJ.
GRISBAUM, Chief Judge.
The defendants, Joguyro, Inc., the Estate of Roy J. LaRocca, and Alliance General Insurance Company, appeal the trial court's judgment in favor of the plaintiff, Darlene Tannehill. The trial court awarded the plaintiff a total of $632,000.00. Fault was allocated as follows: Joguyro, Inc., 35 percent; Roy LaRocca, 35 percent; and Darlene Tannehill, 30 percent. We affirm in part, reverse in part, and amend in part.

ISSUES
The issues presented are:
(1) Whether the trial court erred in finding that the ramp presented an unreasonable risk of harm;
(2) Whether the jury's allocation of fault is manifestly erroneous;
(3) Whether the jury instructions were insufficient;
(4) Whether Roy J. LaRocca, the owner of the premises, had "garde" over the premises;
(5) Whether the trial court erred in not permitting defense counsel to question the plaintiff regarding her efforts to seek reasonable accommodations under the Americans With Disabilities Act, 42 U.S.C. § 12101, et seq.;
(6) Whether the amount of general damages awarded is excessive;
(7) Whether the awards for past and future wage loss are supported by evidence and, alternatively, whether they are excessive; and
(8) Whether the award for future medical expenses is supported by the evidence and, alternatively, whether it is excessive.

*241 FACTS AND PROCEDURAL HISTORY

The plaintiff, Darlene Tannehill, suffered injuries due to a slip-and-fall, which occurred at Cheers, a bar located on Edenborn Avenue in Metaire, Louisiana. Cheers is operated by Joguyro, Inc. ("Joguyro"), a Louisiana corporation in which Roy J. LaRocca ("LaRocca") is the sole shareholder. Joguyro leased the property from the defendant, LaRocca, who owned it.
On June 7, 1993, the plaintiff and her boyfriend went to Cheers after attending a seminar at the Steak and Ale restaurant where no alcohol was allowed. Once at Cheers, Ms. Tannehill consumed four White Russians with one-half shot of vodka but a full shot of Kahluar. She testified that she was "tipsy" and had that "happy and relaxed" feeling but was not intoxicated on the night. Others testified that Ms. Tannehill appeared intoxicated and that she was staggering.
In the bar, there are front and back rooms, which are separated by an opening where a ramp is located. The ramp has a 23-inch slope, is made of plywood, and is installed on wooden members that are bolted to the concrete. This forms the riser of the step. Ms. Tannehill's fall was the first reported injury resulting from a fall caused by this ramp.
The fall occurred when she was going to the bathroom and had to proceed from the front room to the back room. She stepped on the ramp and the left heel of her high-heeled shoes became stuck in a gap in the plywood ramp. This caused her right foot to slide down the ramp. She twisted her ankle and landed on her left knee and back.
Ms. Tannehill went to the emergency room because she felt numbness in her lower back and right extremity. While at the emergency room, she gave the triage nurse her medical history regarding past back surgeries she suffered due to a car accident. Dr. Mary Zelanak reviewed the plaintiff's x-rays and prescribed pain medication and muscle relaxants for her. She was told to see her regular physician.
The following day, Ms. Tannehill went to see Dr. Victor Chisesi, an orthopedic surgeon, who diagnosed her with a lumbar sacral strain and recommended she receive physical therapy because of her continued complaints of pain. An MRI, taken on August 30, 1993, revealed a small recurrent disc herniation in the L-5, S-1 disc and scar tissue, which was causing nerve root irritation.
Dr. Toussaint LeClerq, a neurosurgeon, had Ms. Tannehill undergo an EMG, which disclosed that she had nerve root damage. He performed surgery to remove the herniated disc and scar tissue that had formed from her prior surgeries.
On June 21, 1993, Ms. Tannehill returned to her job as an accounting clerk for Medical Review Services, a drug screening company. However, due to her surgery, she missed four and one-half weeks of work. Even after surgery, she still suffered from pain in her lower back, lower extremity, and numbness in her right foot.
Ms. Tannehill went to a clinical psychologist, Dr. Edward Shwery, who diagnosed her with chronic pain syndrome and extreme sleep deprivation. At one point, she was even diagnosed as suicidal. Doctors recommended that she reduce her number of hours; however, Ms. Tannehill did not because she feared losing her job. While working, her employer allowed her to take time off for doctors' appointments and to take breaks so she could rest. She eventually quit her job because of the pain and after being demoted due to poor work performance.
She began taking classes at the University of New Orleans ("UNO") and completed nine hours her first semester. She testified that she did well in the courses she took.
Ms. Tannehill's case went to trial on January 27, 1997 and lasted four days. A jury found that the ramp on which Ms. Tannehill tripped presented an unreasonable risk of harm. The jury allocated 35 percent of the fault to LaRocca, 35 percent of the fault to Joguyro and Alliance General Insurance Company, and 30 percent of the fault to the plaintiff. The jury awarded plaintiff damages totaling $632,000.00, consisting of $260,000.00 in general damages; $37,000.00 for *242 past lost wages; $250,000.00 for future lost wages; $55,000.00 for past medical expenses; and $30,000.00 for future medical expenses. Legal interest from date of judicial demand, court costs, and fees for seven expert witnesses was also awarded.

ISSUE ONE LAW AND ANALYSIS
Appellants contend the trial court erred in finding that the ramp presented an unreasonable risk of harm and claims this issue is not shielded by the "manifest error" standard of review because it is a legal conclusion and not a factual one. Appellants cite Doane v. Wal-Mart Discount Stores, Inc., 96-2716 (La.App. 4th Cir. 6/25/97), 697 So.2d 309, writ denied, 701 So.2d 1328 and Green v. City of Thibodaux, 94-1000 (La.App. 1st Cir. 10/6/95), 671 So.2d 399, writ denied, 668 So.2d 366. In both of these cases, the courts found that the issue of whether a thing presented an unreasonable risk of harm was a legal determination and, thus, was not shielded by the manifest error rule. Other cases have adhered to the manifest error rule when presented with this issue. See Maxwell v. Bd. of Trustees for State Colleges & Universities, 96-1207 (La.App. 3d Cir. 3/19/97), 692 So.2d 641, writ denied, 695 So.2d 987; Tullis v. Rapides Parish Police Jury, 95-905 (La. App. 3d Cir. 1/17/96), 670 So.2d 245; Scroggins v. Sewerage & Water Bd. of New Orleans, 533 So.2d 132 (La.App. 4th Cir.1988).
The Louisiana Supreme Court was presented with the issue of whether the determination of whether a thing presents an unreasonable risk of harm is a factual conclusion or a legal conclusion. See Boyle v. Bd. of Supervisors, La. State Univ., 96-1158 (La.1/14/97), 685 So.2d 1080. The supreme court declined to decide the issue finding that the trial court was manifestly erroneous. Because of the supreme court's decision to use the manifest error standard in Boyle, we will, likewise, use that standard of review.
To prevail on a strict liability claim under La. C.C. art. 2317, the injured party must prove that the thing which caused the damage was in the custody of the defendant, that the thing had a defect or vice (that is, that it occasioned an unreasonable risk of harm or injury), and the injury was caused by the defect.
Bell v. State of La., et al., 553 So.2d 902, 907 (La.App. 4th Cir.1989) (citations omitted.) "The unreasonable risk of harm criterion is not a simple rule of law which can be applied mechanically. It requires a balancing of claims and interests, a weighing of the risk and the gravity of harm, and a consideration of individual and societal rights and obligations." Id. (citations omitted.)
In determining whether a risk is unreasonable, the court must balance the probability of harm and the magnitude of the risk against the utility of the thing. Id. "The probability of the harm posed plus the gravity of the harm which may ensue must be balanced against the utility of the thing in its condition on the date of the accident. The rights and duties of the parties must also be considered." Id. (citations omitted). Furthermore, not every minor imperfection or irregularity in a thing will give rise to liability. A defect must be a dangerous condition which would reasonably be expected to cause injury to a prudent person using ordinary care under the circumstances. Lee v. Magnolia Garden Apartments, 96-1328 (La.App. 1st Cir. 5/9/97), 694 So.2d 1142.
The record shows Mr. James Lee, an expert in architecture, testified that the ramp at issue failed to comply with any of the safety codes, which he used in his design work, including the Building Code of Jefferson Parish ("BCJP") and the Life Safety Code. He stated that the ramp, at the time of the accident, was not properly constructed because it was made of wood which, over time, is likely to move, shrink, and crack. Mr. Neal Hall, a consulting architectural engineer, also testified that the ramp failed to comply with the BCJP and other applicable codes.
Mr. Jeffrey Charlet, the plan review supervisor for Jefferson Parish employed by the Inspection and Code Enforcement Department, testified that LaRocca had never applied for the necessary building permit to construct the slope on the premises. He also testified that the ramp violated the BCJP.
The trial court, as trier of fact, has great discretion to accept or reject testimony *243 of experts like any other witness. Manchack v. Willamette Industries, Inc., 621 So.2d 649 (La.App. 2d Cir.1993). We cannot say that the trial court abused it discretion in accepting the experts' testimony and finding that the ramp presented an unreasonable risk of harm.
Applying the risk/utility test, we find that the ramp created an unreasonable risk of harm. First, if to reach the back room or the bathroom of the bar use of the ramp was necessary, then, obviously, this ramp was frequently used. Second, the owner took measures to make the ramp safe; thus, it is not an unreasonable burden to impose. Last, people generally go to a bar to consume alcohol; thus, the owner was aware that intoxicated persons would use the ramp and should have taken precautions to make it safe. Thus, we find this assignment of error lacks merit.

ISSUES TWO AND FOUR LAW AND ANALYSIS
Appellants contend that the jury's allocation of fault was manifestly erroneous. The jury allocated 35 percent of the fault to Joguyro, the operator of the lounge; 35 percent to LaRocca, the owner of the premises; and 30 percent to Ms. Tannehill. The allocation of fault among tortfeasors is a finding of fact, Efferson v. State of La., Dep't of Transp. & Dev., 463 So.2d 1342 (La.App. 1st Cir.1984), writ denied, 465 So.2d 722 (La. 1985), which will not be overturned absent manifest error. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989), writ denied, 561 So.2d 105 (La.1990). Considering the jury's allocation of fault and discretion afforded to the trier of fact, we do not find the allocation of fault to the appellee manifestly erroneous.
The jury took into account the fact that Ms. Tannehill had been drinking and that she may not have used the ordinary care which she should have and allocated 30 percent of the fault to her. For these same reasons, the appellants claim that the jury was manifestly erroneous. Finding that the jury did consider these factors, we find that this assignment of error lacks merit.
However, we find allocation of fault to both LaRocca and Joguyro erroneous. Based on Guillory v. Foster, 93-996 (La.App. 3d Cir. 3/2/94), 634 So.2d 1372 and Jacobs v. Spinnakers, 474 So.2d 1019 (La.App. 5th Cir. 1985), the owner of the premises and the lessee of the premises cannot have "custody" or "garde" simultaneously. Since, LaRocca and Joguyro cannot both have "garde," we amend the allocation of fault by the jury and reapportion the 35 percent of fault allocated to LaRocca to Joguyro. This 35 percent is reapportioned to Joguyro because it has garde. Our conclusion that Joguyro has garde is based on the fact that it owns Cheers, where the ramps are located, and it is Joguyro to whom LaRocca leased the premises.
The question of custody or garde by LaRocca is rendered moot because of the conclusion reached herein.

ISSUE THREE LAW AND ANALYSIS
Appellants next contend that the jury instructions were erroneous because they failed to adequately inform the jury of the appellee's duty to exercise "ordinary care." The jury instructions were as follows: "In determining the likelihood of harm in your deliberations, you should consider whether plaintiff is or should be familiar with the risk of harm inherent in the thing, even prior to his injury."
In a jury trial, the trial judge is not required to give the precise instructions submitted by either party but must give instructions which properly reflect the law applicable in light of the facts of the particular case.... The Judge has a duty to charge the jury as to the law applicable in a case and the correlative right and responsibility to require that the jury get only the correct law; it is the Judge's responsibility to reduce the possibility of confusing the jury and he may exercise the right to decide what law is applicable to prevent counsel from arguing law which the trial judge deems inappropriate....
Arnouville v. Joiner Enterprises, Inc., 423 So.2d 1246, 1250 (La.App. 5th Cir.1982) (citations omitted). "An appellate court must exercise great restraint before overturning a jury verdict on the suggestion that the instructions were prejudicial." Gonzales v. Acadiana Fast Foods, Inc., 95-1011 (La.App. *244 3d Cir. 1/31/96), 670 So.2d 457, 461 (citation omitted).
We find the jury instructions, as a whole, were clear with regard to the duty owed by the appellee to exercise "ordinary care." The appellants' requested jury charge was cumulative and redundant. Furthermore, considering the fact that 30 percent of the fault was allocated to the appellee, we find its omission, in no way, prejudiced the appellants.

ISSUE FIVE LAW AND ANALYSIS
Appellants next contend that the trial court erred in not allowing defense counsel to question the appellee regarding her efforts to seek reasonable accommodations under the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101. We recognize that a plaintiff in a personal injury action has a duty to take reasonable steps to mitigate damages. DeRouen v. Audirsch, 25,847 (La.App.2d Cir. 6/28/94), 639 So.2d 476; Parmelee v. Martin Marietta Michoud Aerospace, Inc., 566 So.2d 441 (La.App. 4th Cir.1990). However, we do not find that the trial court erred in not allowing questioning regarding the ADA. The appellee worked as long as she could handle the pain she was suffering and even worked overtime. Furthermore, appellee began attending classes at UNO to improve her situation. Thus, we find that the appellee has taken sufficient measures to mitigate her damages. We further believe it is inappropriate to hold that injured employees have a duty to seek ADA benefits from their employers.

ISSUE SIX LAW AND ANALYSIS
Appellants next contend that the jury's award of $260,000.00 in general damages is excessive. This Court has set forth the standard of review for assessment of general damages as follows:
Louisiana Civil Code Article 1934(3) and Louisiana Supreme Court cases set forth the principles of appellate review for assessment of general damages. Article 1934(3) provides that in assessing general damages, "much discretion must be left to the judge or jury...." Applying Article 1934(3) to review of damage awards, Supreme Court decisions have indicated a methodology for this review.... Only if the record "clearly reveals" that the trier of fact abused its discretion in making its award of damages, can we disturb an award of the trial court....
"Before a trial court award may be questioned as inadequate or excessive, the reviewing court must look first, not to prior awards, but to the individual circumstances of the present case."
Ducote v. State of La., 583 So.2d 590, 591-92 (La.App. 5th Cir.1991) (citations omitted).
We do not find the jury's award of general damages to the appellee excessive. Appellee has suffered severe pain in her back and lower extremity and numbness in her foot. She underwent surgery, which required her to miss four and one-half weeks of work. Her condition further caused her to quit her job. She has had to go through physical therapy and counseling for pain management. Furthermore, appellee and appellee's family and friends testified that her lifestyle has dramatically changed. Therefore, we find this assignment of error lacks merit.

ISSUE SEVEN LAW AND ANALYSIS
Appellants further contend that the jury abused its discretion in awarding appellee $37,000.00 in past lost wages and $250,000.00 in future lost wages. To recover for loss of past or future wages, the appellee must present medical evidence which indicates with reasonable certainty that there exists a residual disability causally related to the accident. Aisole v. Dean, 574 So.2d 1248 (La.1991). We do not find this award an abuse of discretion.
Dr. LeClerq testified that the appellee suffered a herniated disc as a result of the accident and that nothing can alleviate her pain. A vocational evaluation specialist, Mr. Bobby Roberts, testified that Ms. Tannehill will be unable to compete in the work force due to her condition. Dr. Shwery testified as to her physical and psychological pain. Dr. Melvin Wolfson, an expert in forensic economics, testified as to the amount of wages she will lose. Furthermore, there was testimony that Ms. Tannehill will only be able to work at home because of her condition. *245 Thus, she will never have the benefits which she enjoyed when working for her former employer. Therefore, we find this assignment of error lacks merit.

ISSUE EIGHT LAW AND ANALYSIS
Appellants next contend that the jury erred in awarding the appellee $30,000.00 in future medical expenses. The law regarding recovery of future medical expenses is as follows:
Like any other element of special damages, future medical cost or expenses must be established with some degree of certainty, and a plaintiff must demonstrate that such expenditures more probably than not will be incurred as a result of the injury.... The burden of proof in a claim for future medical expenses is a preponderance of the evidence.... Awards will not be made for future medical expenses which may or may not occur, in the absence of medical testimony that the expenses for necessary treatment are indicated and setting out their probable cost....
Mayeaux v. Denny's Inc., 95-453 (La.App. 5th Cir. 10/18/95), 663 So.2d 822, 826 (citations omitted).
Here, Dr. LeClerq and Dr. Shwery established that Ms. Tannehill will suffer chronic pain the rest of her life. Dr. Shwery testified that, although he is not presently treating her for pain, she will need treatment in the future because the pain, at times, will increase. Dr. Shwery estimated that the cost for future treatment will be $20,000.00 to $30,000.00. Therefore, we find that the appellee has proven with medical testimony that she will need future treatment and the cost of that treatment. This assignment of error lacks merit.
For the reasons assigned, the trial court's judgment is hereby affirmed in part, reversed in part, and amended in part. All costs of this appeal are to be assessed against the appellants.
AFFIRMED IN PART, REVERSED IN PART, AND AMENDED IN PART.