736 So.2d 310 (1999)
Derrel W. GOODMAN
v.
ALLSTATE INSURANCE COMPANY.
No. 98-CA-732.
Court of Appeal of Louisiana, Fifth Circuit.
May 19, 1999.
*311 Stewart E. Niles, Jr., Richard T. Gallagher, Jr., Jones, Walker, Waechter, Poitevent, Carrère and Denègre, New Orleans, Louisiana, Counsel for plaintiff-appellant.
E. Kelleher Simon, Simon, Rees and Simon, Covington, Louisiana, Counsel for defendant-appellee.
Court composed of Judges H. CHARLES GAUDIN, SOL GOTHARD and JAMES L. CANNELLA.
GAUDIN, Judge.
This is an appeal by Derrel W. Goodman seeking additional money over and beyond the $14,000.00 awarded to him by a Jefferson Parish jury as the result of an automobile accident. Defendant Allstate Insurance Company answered Goodman's appeal, contending that the sum awarded, considering State Farm Insurance Company's $25,000.00 tender, was excessive.
For the following reasons, we find that Goodman should have been awarded $64,750.00 more than he was given by the jury.
Goodman was in his stopped vehicle on November 15, 1989 when it was struck from behind by another automobile driven by Nick Lonergan and insured by State Farm Insurance Company. State Farm tendered its policy limits, $25,000.00.
Goodman then proceeded against his underinsured carrier, Allstate Insurance Company, which refused to pay. This suit against Allstate ensued. After finding that Allstate did not arbitrarily refuse to honor Goodman's claims, the jury awarded $14,000.00, itemized thusly:

$8,250.00  past and future pain and suffering,
 2,750.00  disability and loss of enjoyment
 of life,
 2,000.00  past lost wages, and
 1,000.00  past medical expenses.

On appeal, Goodman assigns these district court errors:
(1) the trial court's jury instructions were clearly erroneous because they misstated essential legal principles applicable to this case,
(2) the trial court erroneously allowed evidence of irrelevant and prejudicial prior claims/lawsuits,
(3) the trial court erroneously allowed an Allstate claims representative to provide medical opinion testimony,
(4) the trial court erroneously allowed Allstate to elicit impermissible speculative testimony,
(5) the trial court erroneously allowed evidence of unrelated, unsupported prior injuries,
(6) the trial court erred in allowing Allstate to mention highly prejudicial and confusing medical payments,

*312 (7) the trial court erroneously allowed Dr. Joseph Kuebel, an oral surgeon, to state opinions regarding orthodontics,
(8) the trial court erred in not striking the testimony of Dr. Kuebel despite his violation of the sequestration order,
(9) the jury's finding that the accident did not cause or aggravate Goodman's injuries and that Allstate was not in bad faith under McDill v. Utica Mutual Insurance Company, 475 So.2d 1085 (La.1985),
(10) the trial court erroneously denied Goodman's motion for additur, and
(11) the jury's award was unreasonably low and should be increased.

ASSIGNMENT NO. 1
Goodman contends here that the trial court erred in various instructions given to the jury.
They are as follows:
(1) the trial court's jury charges regarding aggravation of a pre-existing condition were incomplete and misleading,
(2) the trial court's jury charges misstated the law regarding damages,
(3) the trial court erroneously charged the jury regarding a plaintiff's burden of proving negligence because `negligence' was not an issue in this case,
(4) the trial court erred by charging the jury regarding subsequent accidents because there was no evidence to indicate that any post-November 15, 1989 accidents caused Goodman's alleged injuries,
(5) the trial court erroneously charged the jury regarding mitigation of damages,
(6) the trial court erred by failing to give a jury charge regarding the limited purpose of the testimony of Bill Nelson, Allstate's claims representative,
(7) the trial court's jury charges regarding Allstate's arbitrary and capricious failure to pay Goodman's claim were incomplete and inaccurate, and
(8) the trial court erroneously failed to charge the jury that the uninsured motorist statute should be liberally construed.
Adequate jury instructions are those which fairly and reasonably present the issues and which provide correct principles of law for the jury to apply to those issues. In making charges to a jury, a trial judge is not required to give the precise instructions submitted by either party, but must give instructions which properly reflect the law applicable in light of the facts of the particular case. See Jones v. Liberty Mut. Ins. Co., 568 So.2d 1091 (La.App. 5th Cir.1990), writs denied at 572 So.2d 72 (La.1991), and LaFrance v. Bourgeois, 701 So.2d 1026 (La.App. 5th Cir.1997), writs denied at 706 So.2d 995 (La.1998).
Also, the law is clear that an appellate court must exercise great restraint before overturning a jury verdict on the suggestion that the instructions were so erroneous as to be prejudicial. See Cuccia v. Cabrejo, 429 So.2d 232 (La. App. 5th Cir.1983), writs denied at 434 So.2d 1097 (La.1983). The standard of review required of this Court in determining whether an erroneous jury instruction has been given requires a comparison of the degree of error with the jury instructions as a whole and the circumstances of the case. See Belle Pass Terminal, Inc. v. Jolin, Inc., 634 So.2d 466 (La.App. 1st Cir. 1994), writs denied at 638 So.2d 1094 (La. 1994). The pertinent question involved in deciding whether reversible error has occurred is whether the jury was misled to such an extent as to prevent it from doing justice, as stated in Jones v. Liberty Mutual Insurance Company, supra.
*313 Our examination of the trial judge's 48-page[1] jury charge shows several inadvertent instructions; for example, one charge suggested that the plaintiff had to prove negligence while several other charges stated that Goodman had an obligation to mitigate damages although there was no testimony that he did not mitigate damages. Allstate did not allege failure to mitigate as an affirmative defense.
Regarding Nelson's testimony, it appears evident that he attempted to explain the insurance company's reasons for not paying Goodman. He said that Allstate relied on medical records and doctors' opinions. This testimony was pertinent inasmuch as Allstate was defending an arbitrary and capricious claim for failure to tender.
No doubt Goodman was injured on November 15, 1989. The issues in this trial were medical; i.e., to what extent was he injured and to what degree were his preaccident injuries/symptoms aggravated. The trial judge's charge, while perhaps not perfect, nevertheless, considered in its entirety, rationally and judiciously spelled out what this case was about and what the jury had to decide. In any event, we cannot say that any instruction, alone or combined with others, was so misleading that it or they contributed inequitably to the verdict.

ASSIGNMENT NO. 2
Goodman contends in this assignment of error that the trial judge allowed 23 mentions of his prior claims or trials, thereby prejudicing the jury. Because causation was at issue, it appears that the trial judge felt that the probative value of the complained-of testimony outweighed the possibility of unfair prejudice.

ASSIGNMENT NO. 3
Nelson testified that he relied on medical records and doctors' opinions, as stated previously herein.

ASSIGNMENTS 4, 5, AND 6
In these assignments of error Goodman argues that the trial judge (a) permitted impermissible speculative testimony by Allstate's medical witnesses, (b) allowed Goodman to be improperly questioned about 1970, 1974, and 1976 automobile accidents and (c) let Allstate confuse the jury by testimony that it had paid $10,000.00 in medical payments which were completely different from Allstate's obligations under its UM coverage.
We cannot ascertain what weight jurors gave to such testimony, assuming that the trial judge erred. However, as causation and Allstate's good faith were issues, the trial judge had considerable discretion in monitoring questions asked of witnesses to prevent the jury from being confused or misled. We cannot say this discretion was abused.

ASSIGNMENTS 7 AND 8
Dr. Joseph Kuebel, an oral malocclusion surgeon, was asked whether orthodontic therapy could be expected to succeed. Although Dr. Kuebel said he had studied orthodontics during his schooling approximately 50 years ago, the question was beyond his expertise. There was only one offending question asked of Dr. Kuebel on this subject, not a barrage of questions. This error was harmless.
Dr. Kuebel was retained by Allstate to examine and evaluate Goodman because of approaching litigation resulting from an accident that had occurred in 1986. Dr. Kuebel testified twice during the instant trial. He was the trial's first witness; later, he was called by Allstate. Between his appearances, Dr. Kuebel spoke with Allstate's attorney.
During the trial, Dr. Kuebel was present in the courtroom only when he was on the witness stand and he did not discuss this case with any other witness. The trial judge ruled that Dr. Kuebel's testimony *314 need not be stricken. This ruling was within the trial judge's discretion.
Furthermore, C.E. art. 615 states, in pertinent part:
"On its own motion the court may, and on request of a party the court shall, order that the witnesses be excluded from the courtroom ... and refrain from discussing the facts of the case with anyone other than counsel in the case."
This article was not violated.

ASSIGNMENTS 9, 10 AND 11
In these assignments, Goodman says that his award was unreasonably low and that Allstate was in bad faith.
Goodman testified that the impact threw him into the steering wheel, stick shift and windshield. He was rendered unconscious and he said that when he woke up at the Tulane Medical Center Hospital his jaw, left arm and left shoulder hurt and that he had a tremendous headache. He had a bruise on his chest and a cut on his head.
Prior to this accident, Goodman had temporomandibular joint syndrome (TMJ). He was wearing a splint at the time of this accident and the violence of the impact broke it.
On November 21, 1998, Goodman went to see Dr. Marshall Gottsegen, an orthodontist who had been treating Goodman for TMJ since April 6, 1988 and who had placed the splint in Goodman's mouth. A splint is a custom-made plastic device which fits over teeth.
Dr. Gottsegen said that in July of 1989, the last time he saw Goodman before the November,1998 accident, that he (Goodman) was doing well. When Dr. Gottsegen examined Goodman four days after the instant accident, he said Goodman's condition was similar to when he initially saw him. Dr. Gottsegen referred Goodman to Dr. Demarsus Smith, an oral surgeon, who eventually performed one surgery on March 23, 1990 and another on March 3, 1993. Both Dr. Gottsegen and Dr. Smith described Goodman's lingering pain and both testified that the November 15, 1989 accident aggravated Goodman's TMJ condition.
Dr. Smith said that additional surgery on Goodman's right side would be required.
In addition, Goodman sustained memory loss, aggravation of back and neck problems and loss of income. His past medical expenses, at time of trial, totaled $39,197.22. Future medical expenses, according to Dr. Smith, would be $43,365.00 if the third surgery was not successful and a subsequent joint replacement required. The third surgery would cost $9,555.00.
Dr. Kuebel examined Goodman on September 11, 1989 and felt that Goodman was having degenerative problems in both jaw joints and that in September, 1989, two months before the November 15, 1989 accident, Goodman was in need of the surgery later performed by Dr. Smith. Nonetheless, the testimony of Drs. Gottsegen and Smith indicated a definite aggravation of Goodman's TMJ by the November 15, 1989 incident. Dr. Kuebel did not see Goodman after the November 15, 1989 accident.
Allstate argues that Goodman had no credibility before the jury because he overstated the extent of his injuries and because some of his testimony was impeached. Nonetheless, we are of the opinion the smallest amount Goodman would be entitled to because of injuries sustained or aggravated by the November 15, 1989 accident would be $89,750.00, itemized as follows:

$50,000.00  past and future pain and
 suffering,
 2,750.00  disability and loss of enjoyment
 of life,
 10,000.00  lost wages,
 20,000.00  past medical expenses, and
 7,500.00  future medical expenses.

*315 Inasmuch as State Farm tendered $25,000.00, this would reduce the award to $64,750.00 plus legal interest from date of judicial demand.
Because of Goodman's physical condition due to prior accidents, however, we cannot say that Allstate was arbitrary or capricious. In this respect, we affirm the jury's determination.
AMENDED IN PART, AFFIRMED IN PART AND RENDERED.
NOTES
[1] Not full pages.