| ANN MARIE CARRERO, ELIZABETH ANN CARRERO AND NANCY CARRERO VINCI | * | NO. 2025-CA-0254 |
|---|---|---|
| | * | COURT OF APPEAL |
| | * | |
| VERSUS | * | FOURTH CIRCUIT |
| | * | |
| MANDINA'S, INC., D/B/A MANDINA'S RESTAURANT | * * * * * * * | STATE OF LOUISIANA |

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2016-08118, DIVISION "M"
Honorable Paulette R. Irons, Judge
* * * * * *
**Judge Dale N. Atkins**
* * * * * *

(Court composed of Chief Judge Roland L. Belsome, Judge Tiffany Gautier Chase, Judge Dale N. Atkins)

Perry R. Staub
Matthew S. Foster
TAGGART MORTON, L.L.C.
1100 Poydras Street, Suite 2100
New Orleans, LA 70163-2100

     COUNSEL FOR PLAINTIFFS/APPELLANTS, Ann Marie Carrero, Elizabeth Ann Carrero, and Nancy Carrero Vinci

Thomas G. Buck
BLUE WILLIAMS, L.L.C.
3421 North Causeway Boulevard, Suite 900
Metairie, LA 70002

     COUNSEL FOR DEFENDANT/APPELLEE, Mandina's, Inc. d/b/a Mandina's Restaurant

**AFFIRMED**
**JANUARY 28, 2026**

DNA

RLB

TGC

This tort case stems from a fatal fall by an elderly customer, Marie Carrero ("Mrs. Carrero"), as she exited Mandina's Restaurant using a ramp that leads to and from a door serving as the main entrance and exit for customers of the restaurant. Appellants are her daughters, Ann Marie Carrero, Elizabeth Ann Carrero, and Nancy Carrero Vinci (collectively the "Carreros"); and Appellee is Mandina's, Inc. d/b/a Mandina's Restaurant ("Mandina's"). The Carreros seek review of the trial court's April 8, 2024 judgment, which adopted the jury's verdict and dismissed the Carreros' claims against Mandina's with prejudice. For the following reasons, we affirm the trial court's judgment.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### Prior Appeal

This matter has previously been before this Court on appeal. In the prior Opinion rendered by this Court, the Court summarized the relevant factual background regarding Mrs. Carrero's fall and the Carreros' Petition for Damages as follows:

> On August 12, 2016, the Carreros filed a Petition for Damages ("Petition") against Mandina's alleging negligence and strict liability for the injury and death of Mrs. Carrero on August 14, 2015. On that date, Mrs. Carrero had dined with her daughter at Mandina's. The

1

Petition allege[d] that Mrs. Carrero exited the Mandina's building using the sloped, step-less handicap ramp leading from the building down to the city street. The Petition assert[ed] that, because of Mrs. Carrero's age and physical condition, she walked down the right side of the ramp supporting herself with her right hand on the middle handrail. According to the Petition, unbeknownst to Mrs. Carrero, the middle handrail ended without warning before the ramp ended, and when Mrs. Carrero reached the end of the ramp, her right hand slipped off the end of the handrail, causing her to lose her balance and tumble to the concrete ramp and the ground. As a result, Mrs. Carrero fell on her head and sustained a closed head injury. She was taken to the emergency room, where a computerized tomography ("CT") scan showed a frontal scalp hematoma. Hours after returning home, Mrs. Carrero developed right-side weakness and lethargy. She returned to the emergency room where a second CT scan showed a left frontal lobe parenchymal hematoma, which had grown from two centimeters ("cm") in size to 6.4 cm x 5 cm x 4.6 cm, and which had surrounding vasogenic edema, resulting in intracranial hemorrhage. On this second visit to the emergency room, Mrs. Carrero was admitted to the hospital and she lapsed into a comatose state. On August 17, 2015, she was transferred to hospice care for end-of-life protocol. Mrs. Carrero passed away from complications related to the intracranial hemorrhage on August 22, 2015.

In the Petition, the Carreros assert[ed] that Mandina's is liable for survival and wrongful death damages for its failure to properly construct, install, or maintain the ramp and handrail, free from all vices and defects and conditions that would render it unreasonably dangerous. The Petition also allege[d] that the handrail, which failed to extend at least 12 inches beyond the end of the sloped ramp, violated the ANSI Code and the Americans with Disability Act ("ADA") Accessibility Guidelines.

*Carrero v. Mandina's*, 2019-0158, pp. 1-3 (La. App. 4 Cir. 8/7/19), 364 So.3d 19, 21-22 (footnote omitted).

In response to the Carreros' Petition, Mandina's filed a Motion for Summary Judgment on two bases. *Id.* at p. 3, 364 So.3d at 22. First, Mandina's alleged that it "did not know, nor was there any reason that it should have known, of the alleged defect in the handrail." *Id.* Second, Mandina's asserted "the handrail was not reasonably dangerous because [the defect] was open and obvious to all." *Id.* The trial court granted the Motion for Summary Judgment and dismissed the Carreros'

2

claims with prejudice. *Id.* The Carreros then appealed, and this Court reversed the trial court's judgment and remanded the matter for further proceedings. *Id.* at p. 14, 364 So.3d at 28.

**<u>Jury Trial</u>**

### *Testimony of Ann Carrero*

Thereafter, the matter proceeded to trial before a jury. One of Mrs. Carreros' daughters, Ann Carrero ("Ann"), testified and, in pertinent part, answered affirmatively when asked whether her mother "could see just fine" prior to the subject accident. Additionally, Ann testified that Mrs. Carrero had suffered from a stroke around 2008 but that her mother nonetheless "got around better than" she (Ann) did after that. Counsel for Mandina's asked Ann about medical records from 2012 from Mrs. Carrero's physician, which stated, "Has fallen several times; [does not] use care." Ann explained that she could not recall Mrs. Carrero falling prior to the subject accident except for one backwards fall Mrs. Carrero experienced at home in 2014 while attempting to sit in a chair. Ann testified that Mrs. Carrero did not have a history of falling. During Ann's testimony, counsel for Mandina's also pointed out a medical record from Mrs. Carrero's physician dated July 29, 2015— two weeks prior to the subject accident—that stated, "[Nancy Carrero] feels [Mrs. Carrero] is less stable walking." Ann countered that because she lived with Mrs. Carrero prior to the subject accident, she would have known if her mother's stability while walking had become worse but "did not notice anything" in that regard.

### *Testimony of Elizabeth Carrero*

One of Mrs. Carrero's other daughters, Elizabeth Carrero ("Elizabeth"), also testified, explaining that she was the one who ate with Mrs. Carrero at Mandina's

prior to the subject fall. Regarding the fall, Elizabeth stated, "My mother was walking on the handicap ramp ahead of me and I was directly behind her. . . . She fell forward at the end of the ramp." Counsel for Mandina's asked Elizabeth about a note in the medical records generated in the wake of Mrs. Carrero's fall which stated, "Patient brought into the [emergency room] after a trip and fall. Patient's daughter states patient tripped over her own foot." Elizabeth testified that although both of her sisters had already denied that they said this to anyone, she also did not provide that statement to any medical personnel and had "no idea" from whom or where it originated. Counsel for Mandina's then questioned Elizabeth about how and why Mrs. Carrero fell, and she responded, "She did not trip over her feet. . . . I [do not] know why she fell." During her testimony, Elizabeth also confirmed Mrs. Carrero had been walking with a cane for a couple of years prior to the subject fall.

### Testimony of Martial Votier

Martial Votier ("Mr. Votier") testified that he had been the general manager of Mandina's since 2004. Regarding the date of the subject accident, Mr. Votier explained that when he arrived at Mandina's for work that afternoon, he noticed "some commotion on the ramp," specifying that it was "[n]ot [on] the sidewalk" but rather "[u]p on the ramp probably about midway between the bottom and the door and the main entrance." Mr. Votier explained that upon further inspection, he determined an elderly customer had fallen and hurt her head, whereupon he sat with her until an ambulance arrived.

### Expert Testimony

The trial court accepted Robert Oliver ("Mr. Oliver") as an expert in the field of architecture. Mr. Oliver testified he inspected the handrail and ramp at Mandina's and concluded the handrail did not comply with three different codes,

namely the "International Building Code"; "the Life Safety NFPA 101 which is commonly called the Fire Marshal's Code"; and "the Americans with Disabilities Act also known as Architectural Barriers Act or handicap code." Specifically, Mr. Oliver explained the handrail was non-compliant with the foregoing because of its failure to "extend horizontally an additional 12 inches" at the "terminus of the ramp."

Additionally, the trial court accepted Angela Levitan ("Ms. Levitan") as an expert in human factors and biomechanics. When asked why it is "helpful to have an extension of [a] handrail after . . . a change from slope to flat," Ms. Levitan emphasized the extension of the handrail "throughout the slope and . . . during the transition to the level" ground provides "stability[,] particularly [for] somebody whose balance might be a little bit more challenged."

Both Mr. Oliver and Ms. Levitan testified on behalf of the Carreros. Mandina's did not refute the Carreros' expert testimony with expert testimony of its own.

## Jury Verdict and Judgment

Pertinent to this appeal, the Carreros proposed multiple special jury instructions that the trial court struck, whereupon the Carreros lodged contemporaneous objections. Because the Carreros complain of this in their brief, the proposed special jury instructions at issue in this appeal are discussed more fully later in the Opinion.

When the jurors retired to deliberate, they answered the first jury interrogatory in the negative, responding the Mandina's handrail did not constitute

5

an unreasonably dangerous condition.[1] Because the jurors found the handrail did not constitute an unreasonably dangerous condition, they did not proceed further and answer any other interrogatories. Then, on April 8, 2024, the trial court signed a judgment which dismissed the Carreros' claims against Mandina's with prejudice in light of the decision reached by the jury. The Carreros' timely appeal to this Court followed.

## ASSIGNMENTS OF ERROR

The Carreros assert five assignments of error in their brief to this Court:

(1) The [trial] [c]ourt erred in providing a final jury charge which was so inadequate as to constitute reversible error and likely contributed to the jury verdict.

(2) The [trial] [c]ourt erred in permitting the jury to hear irrelevant and prejudicial information relating to the medical malpractice claim made by the Carreros in connection to the death of Mrs. Carrero.

(3) The [trial] [c]ourt erred in permitting the jury to hear irrelevant and prejudicial evidence and argument that implied that because the third-party contractors and New Orleans City officials Mandina's relied on made mistakes that Mandina's was not liable for harm caused by the defective condition.

(4) The [trial] [c]ourt erred by failing to apply the law of the case doctrine by permitting Mandina's to argue that the fault of third parties diminished its liability, and by failing to provide the jury with legal principles emanating from this Court's prior opinion in this case.

(5) The jury's finding that the defective condition, which violated applicable building and safety codes and was not open and obvious, when viewed in light of the entire record and when considering the applicable law, was manifestly erroneous.

We note that the order of the Carreros' arguments in their brief does not match the order of their assignments of error. For ease, our discussion will follow the same order as the Carreros' arguments in their brief, such that we will analyze the

---

[1] The phrases "unreasonably dangerous condition" and "unreasonable risk of harm" will be used interchangeably throughout the Opinion.

assignments of error out of order. Before doing so, however, we will preliminarily delineate the elements the Carreros had to prove to succeed with their claim.

## DISCUSSION

### Elements Necessary to Prove the Carreros' Claims

As mentioned previously, the jury answered only one interrogatory—whether the handrail constituted an unreasonably dangerous condition—and answered this question in the negative. The Carreros' claims are rooted in La. C.C. arts. 2317; 2317.1; and 2322. Louisiana Civil Code Article 2317 states that "[w]e are responsible, not only for the damage occasioned by our own act, but for that which is caused by . . . the things which we have in our custody." In this latter regard,

> The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.

La. C.C. art. 2317.1. Louisiana Civil Code Article 2322 is titled "Damage caused by ruin of building." It provides, in pertinent part:

> The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice or defect in its original construction. However, he is answerable for damages only upon a showing that he knew or, in the exercise of reasonable care, should have known of the vice or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.

La. C.C. art. 2322. As explained in this Court's prior *Carrero* Opinion, "La. C.C. art. 2322 specifically modifies liability under [La. C.C. art.] 2317 with respect to the owner of a ruinous building or defective component part of that building."

2019-0158, p. 5, 364 So.3d at 23 (internal quotation marks omitted) (quoting *Hooper v. Brown*, 2015-0339, p. 6 (La. App. 4 Cir. 5/22/15), 171 So.3d 995, 1000).

As also delineated in this Court's prior Carrero Opinion, a plaintiff must prove six elements to succeed under La. C.C. arts. 2317, 2317.1, and 2322:

1. The thing was in the owner's custody or control;

2. The thing contained a defect creating an unreasonable risk of harm;

3. The damage was caused by the defect;

4. The owner knew or should have known of the vice or defect;

5. The owner could have prevented the damage by the exercise of reasonable care; and

6. The owner failed to exercise such reasonable care.

*Id.* (quoting *Maddox v. Howard Hughes Corp.*, 2019-0135, p. 6 (La. App. 4 Cir. 4/17/19), 268 So.3d 333, 338 n.6). The parties do not dispute that Mandina's owned the subject handrail and had custody and control over it.

The next issue for the Carreros to prove was whether the handrail had a defect that created an unreasonable risk of harm. Moreover, as previously stated, the only interrogatory answered by the jury concerned whether the defect created an unreasonable risk of harm.

**DISCUSSION**

**<u>Assignment of Error Number Four: The Trial Court Erred in Failing to Apply the Law of the Case</u>**

In their fourth assignment of error, the Carreros assert the trial court erred in failing to apply the "law of the case" doctrine insofar as this Court's prior Opinion in this matter yielded several holdings that "should have been made part of the final jury charges." In pertinent part, the Carreros complain about the trial court's rejection of their proposed special jury instruction that stated:

8

> The Carreros contend that the handrail, which did not extend the required 12 inches beyond the end of the ramp, was not an open and obvious condition which would preclude . . . liability. The defective handrail here was not open and obvious. Photographs show that the handicap ramp gradually sloped downward, and a pedestrian using it would not have realized that the handrail abruptly ended before the end of the slope until she reached the end of the handrail. This defect is not one that is open and obvious to all.

Additionally, the Carreros contest the trial court's rejection of their proposed special jury instruction which stated, "The defective handrail at issue in this case was not one that was open and obvious to all." The Carreros also complain that the trial court struck several of their proposed special jury instructions regarding the issue of constructive notice. Mandina's counters that the law of the case doctrine does not apply to this matter. We agree with Mandina's.

The law of the case doctrine refers, in pertinent part, to "the conclusive effects of appellate court rulings at the trial on remand" and "the rule that an appellate court will ordinarily not reconsider its own rulings . . . on a subsequent appeal in the same case." *Crain v. Nat'l Liability & Fire Ins. Co.*, 2023-0413, p. 4 (La. App. 4 Cir. 11/21/23), 382 So.3d 995, 998 (quoting *Armstrong Airport Concessions v. K-Squared Rest., LLC*, 2015-0375, p. 7 (La. App. 4 Cir. 10/28/15), 178 So.3d 1094, 1100). The law of the case doctrine applies "when an appellate court considers arguments made on appeal," such that its "disposition on the issue considered becomes . . . the law of the case," thereby "foreclosing relitigation of that issue either in the trial court on remand or in the appellate court on a later appeal." *Davis v. Cheema, Inc.*, 2014-1316, p. 20 (La. App. 4 Cir. 5/22/15), 171 So.3d 984, 994 (internal quotation marks omitted) (quoting *Reed v. St. Charles Gen. Hosp.*, 2008-0430, 0431, 0570-0573, p. 9 (La. App. 4 Cir. 5/6/09), 11 So.3d 1138, 1145). The doctrine applies to the resolution of "a question of law or a mixed

question of law and fact during the course of a judicial proceeding." *Brown v. Serpas*, 2013-1679, p. 4 (La. App. 4 Cir. 7/16/14), 146 So.3d 748, 752 (quoting 1 Frank L. Maraist and Harry T. Lemmon, LOUISIANA CIVIL LAW TREATISE: CIVIL PROCEDURE, at § 6.7).

If the appellate court reverses the trial court's grant of a summary judgment on the grounds that there remain genuine issues of material fact or affirms the trial court's denial of summary judgment for that reason, then the law of the case doctrine does not apply to those aspects of the case moving forward. *Hansen v. River Cities Disposal Co.*, 51,700, p. 7 (La. App. 2 Cir. 11/15/17), 245 So.3d 213, 219 (citations omitted). That is, regarding any genuine issues of material fact as decreed by the appellate court, "the only 'law of the case' . . . was that there were issues of fact which needed to be decided upon by a jury." *Roger v. Dufrene*, 1997-1946, p. 15 (La. App. 4 Cir. 9/9/98), 718 So.2d 592, 600. As previously noted, Mandina's sought summary judgment on two bases: (1) Mandina's did not know, nor was there any reason that it should have known, of the alleged defect in the handrail (lack of constructive notice); and (2) the handrail was not unreasonably dangerous because it was open and obvious to all. This Court's focus in the prior *Carrero* Opinion was thus necessarily about these two issues, so we must determine whether this Court made any pronouncements regarding same that now call for us to apply the law of the case doctrine.

In the prior *Carrero* Opinion, this Court discussed the open and obvious nature of the handrail defect, and the open and obvious nature of a defect relates to the plaintiff's burden of proving that a defect was unreasonably dangerous. *Mendoza v. Ace Prop. & Cas. Ins. Co.*, 2024-0604, pp. 14-15 (La. App. 4 Cir. 5/27/25), 414 So.3d 1172, 1183 (quoting *Haynes v. Sewerage & Water Bd. of New*

10

*Orleans*, 2023-0678, p. 23 (La. App. 4 Cir. 7/31/24), 399 So.3d 626, 643). However, while a court can resolve the open and obvious issue on summary judgment, this Court's prior *Carrero* Opinion did not do so. *See Jones v. Stewart*, 2016-0329, p. 14 (La. App. 4 Cir. 10/5/16), 203 So.3d 384, 393 (holding that "absent any material factual issue, the summary judgment procedure can be used to determine whether a defect is open and obvious and thus does not present an unreasonable risk of harm") (citations omitted). Specifically, in the prior *Carrero* Opinion, this Court stated, "Mandina's has failed to establish a prima facie case that the handrail was an open and obvious danger." 2019-0158, p. 14, 364 So.3d at 28. Importantly, the Court went on to hold in the conclusion of the Opinion "that the Carreros produced factual support sufficient to contest whether the handrail at issue was unreasonably dangerous" and "open and obvious . . . . Thus, under the particular facts of this matter, we conclude there are remaining genuine issues of material fact, and summary judgment is not appropriate." *Id.* The Court merely found Mandina's did not meet its summary judgment burden of proof but did not unequivocally rule whether the handrail defect was open and obvious so as to create a law of the case in this regard.

Likewise, the prior *Carrero* Opinion did not generate any law of the case regarding whether Mandina's had constructive notice of the handrail defect. Regarding constructive notice, this Court first held: "We find that evidence of . . . violations of safety and building codes governing handrails created a genuine issue of material fact as to whether Mandina's had constructive knowledge of the handrail's unreasonably dangerous condition." 2019-0158, p. 10, 364 So.3d at 26. This Court also held the Carreros "established a genuine issue of material fact as [to] whether Mandina's had constructive knowledge of the defect on its handrail

11

based on the alleged errors by [the] architect, contractor, and inspector." *Id.* at p. 12, 364 So.3d at 27. As with the open and obvious issue, the Court subsequently couched the entire constructive notice issue in summary judgment terms in its conclusion by stating the Carreros "produced factual support sufficient to contest . . . whether Mandina's had constructive knowledge of the defect." *Id.* at p. 14, 364 So.3d at 28. The Court did not unequivocally rule on the constructive notice issue so as to create a law of the case that Mandina's did or did not have constructive notice. Moreover, in terms of the importance—or lack thereof—regarding what this Court previously stated about constrictive notice, we reiterate that the jury did not even reach the issue of constructive notice because the jurors first found the handrail was not unreasonably dangerous which ended their inquiry in this matter.

In sum, the Carreros' fourth assignment of error lacks merit. This Court's prior *Carrero* Opinion yielded no "law of the case" regarding the issues of the open and obvious nature of the defect and constructive notice but instead held there remained genuine issues of material fact for these aspects of the case.

### Assignment of Error Number One: The Final Jury Charge Necessitates Reversal

In their first assignment of error, the Carreros contend the trial court "omitted numerous essential legal principles from the final jury charge," such that reversal is warranted. Again, the Carreros assign error to the trial court's rejection of some of their proposed special jury instructions. Countering, Mandina's asserts the trial court adequately instructed the jury about the substance of the law. Mandina's further argues there is nothing to support a finding that the trial court's rejection of the Carreros' proposed special jury instructions resulted in prejudice to

them or materially affected the outcome. Before addressing the merits of the parties' arguments, we begin with the applicable standard of review.

***Standard of Review Regarding the Jury Instructions***

An appellate court reviews the instructions given to the jury under the manifest error standard of review. *PVCA, Inc. v. Pac. W. TD Fund LP*, 2020-0327, p. 7 (La. App. 4 Cir. 1/20/21), 313 So.3d 320, 327 (citing *Fireman's Fund Ins. Co. v. R.S. Homes, LLC*, 2019-0621, 0622, pp. 3-4 (La. App. 4 Cir. 3/25/20), 294 So.3d 54, 59). Because "[t]rial courts" have "broad discretion in formulating jury instructions," the appellate court should not reverse the trial court as "long as the charge correctly states the substance of the law." *Id.* (quoting *Adams v. Rhodia, Inc.*, 2007-2110, p. 6 (La. 5/21/08), 983 So.2d 798, 804).

As this Court has previously explained, "In considering an argument of improper jury instruction, the [appellate] court should consider the entirety of the charges and determine if they adequately provide[d] the correct principles of law applicable to the issues as framed by the pleadings and the evidence, and whether they provide[d] adequate guidelines for the jury." *Hero Lands Co. v. Chevron U.S.A., Inc.*, 2022-0224, p. 31 (La. App. 4 Cir. 3/7/23), 359 So.3d 130, 149 (quoting *Seal v. State Farm Fire & Cas. Co.*, 2000-2375, p. 4 (La. App. 4 Cir. 3/20/02), 816 So.2d 868, 872). The Louisiana Fifth Circuit Court of Appeal ("Fifth Circuit") has defined "[a]dequate jury instructions" as "those which fairly and reasonably present the issues and which provide correct principles of law for the jury to apply to those issues." *Goodman v. Allstate Ins. Co.*, 1998-732, p. 3 (La. App. 5 Cir. 5/19/99), 736 So.2d 310, 312. The trial court does not have "to give the precise instructions submitted by either party, but must give instructions which properly reflect the law applicable in light of the facts of the particular case." *Id.*

13

(first citing *Jones v. Liberty Mut. Ins. Co.*, 568 So.2d 1091, 1094 (La. App. 5th Cir. 1990); and then citing *LaFrance v. Bourgeois*, 1997-376, p. 4 (La. App. 5 Cir. 10/15/97), 701 So.2d 1026, 1029). Appellate courts are to "exercise great restraint before overturning a jury verdict on the suggestion that the instructions were so erroneous as to be prejudicial." *Id.* at pp. 3-4, 736 So.2d at 312 (citing *Cuccia v. Cabrejo*, 429 So.2d 232, 235 (La. App. 5th Cir. 1983)). The appellate courts are to compare "the degree of error with the jury instructions as a whole and the circumstances of the case." *Id.* at p. 4, 736 So.2d at 312 (citing *Belle Pass Terminal, Inc. v. Jolin, Inc.*, 634 So.2d 466, 488-89 (La. App. 1st Cir. 1994)). *See also Hero Lands Co.*, 2022-0224, p. 31, 359 So.3d at 149-50 (holding that "this Court reviews jury instructions as a whole and in light of the circumstances of the case" (quoting *Seal*, 2000-2375, 816 So.2d at 872)).

"The pertinent question" for the appellate court "in deciding whether reversible error has occurred is whether the jury was misled to such an extent as to prevent it from doing justice." *Goodman*, 1998-732, p. 4, 736 So.2d at 312 (citing *Jones*, 568 So.2d 1091, 1094). *See also Hero Lands Co.*, 2022-0224, p. 31, 359 So.3d at 150 (defining this as "the determinative question" (quoting *Adams*, 2007-2110, p. 7, 983 So.2d at 804)). Only if the jury charge was "so inadequate that the jury [could not] reach a verdict based on the law and the facts of the case" should the appellate court conduct a *de novo* review of the record. *PVCA, Inc.*, 2020-0327, p. 7, 313 So.3d at 327 n.7 (citing *Seal*, 2000-2375, p. 5, 816 So.2d at 872). With these precepts in mind, we turn to the Carreros' contentions.

*Constructive Notice and the Mistakes of Others*

The Carreros argue the trial court should have instructed the jury, as they proposed in a special jury instruction, that the absence of prior accidents was

14

immaterial to whether Mandina's had constructive notice of the defect. The Carreros contend the trial court should have instructed the jury, as they proposed in another special jury instruction, that because the handrail had been in use "for more than a decade," then "there should be a presumption that the property owner constructively knew of the defect." Further, the Carreros also contend this Court "explicitly rejected" the argument asserted by Mandina's that it "was not liable for the mistakes of contractors or other third parties" and assert the trial court erred in denying their proposed special jury instruction restating this holding. These purported "omissions" from the jury instructions do not even pertain to the question actually considered by the jury, i.e., whether the handrail defect was unreasonably dangerous and created an unreasonable risk of harm. Because the jury did not even get past the threshold issue of finding the defect was unreasonably dangerous, we find it is of no merit whether and how the trial court instructed the jury regarding the distinct, unrelated issues of constructive notice and the mistakes of others. The jury was not "misled to such an extent as to prevent it from doing justice." *Goodman*, 1998-732, p. 4, 736 So.2d at 312 (citing *Jones*, 568 So.2d 1091, 1094).

### *Open and Obvious*

Next, the Carreros also argue the trial court should have informed the jury the handrail defect was not open and obvious per this Court's prior *Carrero* Opinion and erred in rejecting their proposed special jury instruction to this effect. But, as previously explained, this Court held there remained genuine issues of material fact about the open and obvious nature of the defect and did not dispose of that issue entirely. This argument is without merit.

***Building and Safety Code Violations***

The Carreros also argue the trial court should have accepted their proposed special jury instruction "that under Louisiana law[,] building and safety code violations are relevant evidence in determining whether a condition is unreasonably dangerous and that those violations may serve as guidelines for determining civil liability." In support of this argument, the Carreros cite, in pertinent part, to this Court's prior *Carrero* Opinion and *Trayanoff v. Omni Hotels Management Corp.*, 2024-0366 (La. App. 4 Cir. 12/10/24), 408 So.3d 221. In *Carrero*, this Court found that evidence of violations of safety and building codes governing handrails created a genuine issue of material fact as to whether Mandina's had constructive knowledge of the defect. 2019-0158, p. 10, 364 So.3d at 26. Likewise, in the section of *Trayanoff* cited by the Carreros, this Court held that "building code violations create a question of fact as to whether a defendant should have known of a defective condition," i.e., again speaking to the constructive notice issue that the jury did not reach, not the issue of whether a defect is unreasonably dangerous. 2024-0336, p. 14, 408 So.3d at 230.

The Carreros also cite to *Tannehill v. Joguyro, Inc.*, 1997-571 (La. App. 5 Cir. 4/9/98), 712 So.2d 238. Therein, the Fifth Circuit explained that experts testified before the jury that the subject ramp failed to comply with certain building and safety codes. *Tannehill*, 1997-571, p. 6, 712 So.2d at 242. Thereafter, the Fifth Circuit explained the "trier of fact[] has great discretion to accept or reject testimony of experts like any other witness." *Id.* at p. 6, 712 So.2d at 242-43 (citing *Manchack v. Willamette Indus., Inc.*, 621 So.2d 649, 654 (La. App. 2d Cir. 1993)). Regarding the expert testimony, the Fifth Circuit ultimately ruled: "We cannot say that the trial court abused it[s] discretion in accepting the experts' testimony and

finding that the ramp presented an unreasonable risk of harm." *Id.* at pp. 6-7, 712 So.2d at 243. The Fifth Circuit then explained why the situation satisfied the other risk-utility balancing factors that inform whether a defect created an unreasonable risk of harm. *Id. See Mendoza*, 2024-0604, p. 15, 414 So.3d at 1183 (delineating the risk-utility balancing factors as: "[a.] the utility of the complained-of condition; [b.] the likelihood and magnitude of harm, including the obviousness and apparentness of the condition; [c.] the cost of preventing the harm; and [d.] the nature of the plaintiff's activities in terms of its social utility or whether it is dangerous by nature" (alterations in original) (quoting *Haynes*, 2023-0678, p. 23, 399 So.3d at 643)).

Nonetheless, while compliance with codes and safety standards is a factor to be considered in determining premises liability, the Louisiana First Circuit Court of Appeal ("First Circuit") has cautioned that it is not the only one. *Primeaux v. Best W. Plus Houma Inn*, 2018-0841, p. 11 (La. App. 1 Cir. 2/28/19), 274 So.3d 20, 30 (citing *Calcagno v. Kuebel, Fuchs P'ship*, 2001-691, p. 9 (La. App 5 Cir. 11/14/01), 802 So.2d 746, 751). In fact, in *Handy v. City of Kenner*—an opinion issued by the Fifth Circuit after *Tannehill*—the court specifically held that evidence of code violations alone cannot satisfy the plaintiff's burden of proving the existence of an unreasonably dangerous condition. 2012-135, p. 9 (La. App. 5 Cir. 6/28/12), 97 So.3d 539, 545. Thus, even if the jurors had received the proposed special jury instruction urged by the Carreros, the jury's acceptance of same would not have established the existence of an unreasonably dangerous condition. Further, the Carreros cite to no jurisprudence requiring such a jury instruction in a premises liability case nor has this Court located any.

Moreover, the record reflects the trial court properly instructed the jury on the applicable law regarding unreasonably dangerous conditions. Specifically, the trial court instructed the jury that the Carreros had to prove by a preponderance of the evidence that the handrail contained a defect creating an unreasonable risk of harm. The trial court defined an unreasonable risk of harm for the jury as "when the likelihood that harm might occur and the seriousness of such harm if it did happen outweighs the importance to society of the thing and the way the owner or custodian has chosen to maintain the thing under the circumstances." Further, the trial court instructed the jury:

> A landowner owes a duty to a plaintiff to discover any unreasonably dangerous conditions, and to either correct the condition or warn of its existence. While landowners generally do not have a duty to protect against an open and obvious hazard, in order for an alleged hazard to be considered obvious and apparent, the hazard should be one that is open and obvious to everyone who may potentially encounter it. The degree to which a danger may be observed by a potential victim is a factor in the determination of whether the condition is unreasonably dangerous.

> A landowner does not insure against the possibility of an accident on his premises, but rather he must act reasonably in view of the probability of injuries to others.

The trial court also instructed the jury that testimony by a witness constituted direct evidence which could prove a fact. In this regard, the jury heard and considered Mr. Oliver's expert testimony the handrail failed to comply with the "International Building Code"; "the Life Safety NFPA 101 which is commonly called the Fire Marshal's Code"; and "the Americans with Disabilities Act also known as Architectural Barriers Act or handicap code." The trial court's jury instructions did not mislead the jurors to such an extent so as to prevent them from doing justice regarding the unreasonably dangerous nature of the defect. This contention lacks merit.

18

***Expert Testimony***

Finally, the Carreros complain about the trial court's rejection of their proposed special jury instruction that "uncontradicted expert testimony should be accepted as true in the absence of circumstances in the record that cast suspicion on the reliability of the testimony." In support of that statement, the Carreros cite *to In re Succession of Lovoi*, 2000-1391 (La. App. 5 Cir. 12/27/00), 777 So.2d 627. The Carreros correctly observe that Mandina's did not present any expert testimony at the trial to refute theirs.

As quoted by the Carreros, in *In re Succession of Lovoi*, the Fifth Circuit held that "uncontradicted expert testimony should be accepted as true in the absence of circumstances in the record that cast suspicion on the reliability of the testimony." 2000-1391, p. 5, 777 So.2d at 630 (quoting *Arnold v. Town of Ball*, 1994-972, p. 8 (La. App. 3 Cir. 2/1/95), 651 So.2d 313, 319). However, in the proposed special jury instruction and in their brief to this Court, the Carreros omitted the first part of the quote that importantly explains that "uncontradicted expert testimony is not binding on the trier of fact." *Id.* Moreover, in *Mathews v. Dousay*, the plaintiffs similarly "requested that the trial court instruct the jury that in evaluating evidence, the trier of fact should accept as true the uncontradicted testimony of a witness where the record indicates no sound reason for its rejection" regarding an economist's expert testimony. 1996-858, p. 8 (La. App. 3 Cir. 1/15/97), 689 So.2d 503, 509. On appeal, the Louisiana Third Circuit Court of Appeal ("Third Circuit") affirmed the trial court's denial of the request, explaining:

> We find that the jury instructions, taken as a whole, were not so incorrect or inadequate as to preclude the jury from reaching a verdict based on the relevant law and facts. The trial court instructed the jury that a witness is presumed by law to speak the truth and that the jury could accept all, some, or none of a witness' testimony. Additionally,

> the trial court instructed the jury that experts must give reasons for their opinions and that if the jury felt that an expert's opinion [was] not based on sufficient background, that the expert's reasons were not supported by the facts of the case, or that the expert's opinion [was] outweighed by other evidence, it could disregard the expert's opinion. While the requested instruction would have been an accurate statement of the law in light of the other instructions actually given to the jury on expert testimony, we do not find that the jury was misled to such an extent as to be prevented from doing justice.

*Id.* at p. 9, 689 So.2d at 510.

Likewise, in the matter *sub judice*, the jury instructions, as a whole, were not so incorrect or inadequate as to preclude the jury from reaching a verdict based on the relevant law and facts. The trial court instructed the jury that "[t]he law presumes that a witness is telling the truth about facts that are within his knowledge." The trial court told the jurors they did not "have to accept all of the testimony of a witness as being true or false" and could "accept and believe those parts of the testimony that [they] consider[ed] logical and reasonable" while "choos[ing] not to believe those parts that seem impossible or unlikely." Regarding expert witnesses specifically, the trial court instructed the jury that they "are allowed to express opinions because their education, expertise or experience in a particular field or on a particular subject might be helpful." The trial court further instructed the jurors that they should consider the expert witnesses' opinions and rely on the opinions based on "the weight" the jurors thought "they deserve[d]." The trial court also advised the jurors that they were allowed to disregard an expert's opinion entirely if they determined the expert's opinion was not based on sufficient education, expertise or experience; if the reasons given in support of the opinion were not sound; or if other evidence outweighed the opinion. As in *Mathews*, the Carreros' requested instruction would have been an accurate statement of the law; but, in light of the other instructions actually given to the jury

on expert testimony, we conclude the jury was not misled to such an extent as to prevent it from doing justice.

In light of our foregoing analysis, we hold the Carreros' first assignment of error is without merit.

### Assignments of Error Numbers Two and Three: The Trial Court Permitted the Jury to Hear Information that Was More Irrelevant and Prejudicial

Next, the Carreros argue "[t]he jury was . . . permitted to hear information relating to the medical malpractice suit brought by the Carreros in connection to [Mrs. Carrero's] fatal fall, and to hear testimony and argument relating to the potential fault of contractors, architects, and New Orleans City officials." They contend the information was not only irrelevant but also substantially more prejudicial than probative, such that the trial court should have disallowed it under La. C.E. arts. 402 and 403. Mandina's counters that even assuming arguendo that the Carreros' contention is correct that the information was irrelevant and prejudicial, it is of no merit as the information did not affect the outcome of the case. We agree with Mandina's.

Louisiana Code of Evidence Article 402 provides that "[a]ll relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of Louisiana, this Code of Evidence, or other legislation. Evidence which is not relevant is not admissible." If evidence may result in prejudice, confusion, or a waste of time, a trial court can exclude it under La. C.E. art. 403. That Article states: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time." La. C.E. art. 403.

As previously explained by this Court, "A trial court's ruling as to relevancy will not be disturbed absent a clear abuse of discretion." *State v. White*, 2009-0025, p. 9 (La. App. 4 Cir. 9/16/09), 22 So.3d 197, 204 (quoting *State v. Hall*, 2002-1098, p. 8 (La. App. 4 Cir. 3/19/03), 843 So.2d 488, 496). Likewise, "A trial court is vested with much discretion in determining whether the probative value of relevant evidence is substantially outweighed by its prejudicial effect." *Id.* If the trial court improperly admitted evidence, that "decision . . . is subject to a harmless error analysis." *State v. Green*, 2016-0793, p. 8 (La. App. 4 Cir. 5/3/17), 220 So.3d 103, 108 (citing *State v. Ard*, 2008-1440, p. 8 (La. App. 4 Cir. 6/17/09), 15 So.3d 1166, 1170). "For an error to be harmless, it must be shown beyond a reasonable doubt that the complained-of error did not contribute to the verdict." *Id.* at pp. 8-9, 220 So.3d at 108-09.

As stated previously, the jury did not get past the threshold issue of finding the handrail defect constituted an unreasonably dangerous condition. Even assuming that the Carreros are correct the subject information was irrelevant and more prejudicial than probative, it did not contribute to the jury's verdict. Information regarding the Carreros' medical malpractice claim and the work done by third parties in designing, building, installing, and inspecting the handrail had no bearing on the issue of whether the defect presented an unreasonably dangerous condition. The Carreros' brief does not attempt to explain how such information contributed to the jury's finding that the handrail defect was not unreasonably dangerous. Even if the trial court erred by admitting the information, an issue which we need not reach, such error would accordingly be harmless. The Carreros' second and third assignments of error are without merit.

**<u>Assignment of Error Number Five: The Jury Verdict Was Manifestly Erroneous</u>**

Finally, the Carreros assert the jury's verdict was manifestly erroneous and ask us to conduct a *de novo* review of the record in light of the legal errors committed in this matter. Our foregoing analysis explains why the legal errors complained of by the Carreros cannot be said to have interdicted the fact-finding process. Further, as an appellate court, we are to review the jury's verdict under the manifest error standard of review, bearing in mind:

> Because the determination of whether a defective thing presents an unreasonable risk of harm "encompasses an abundance of factual findings, which differ greatly from case to case, followed by an application of those facts to a less-than scientific standard, a reviewing court is in no better position to make the determination than the jury or trial court." Accordingly, the fact-finder's unreasonable risk of harm determination is subject to the manifest error standard of review and should be afforded deference on appeal. Under the manifest error standard of review, a court of appeal may not set aside a jury's finding of fact unless it is manifestly erroneous or clearly wrong. The reviewing court must only decide whether the fact-finder's conclusion was reasonable, not whether it was right or wrong. In order to reverse a jury's factual finding as manifestly erroneous, an appellate court must find the record, when reviewed in its entirety, (1) contains no reasonable factual basis for the jury's finding and (2) establishes the finding is clearly wrong. The court of appeal must always be mindful that if the jury's findings "are reasonable in light of the record reviewed in its entirety . . . [it] may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently."

*Broussard v. State ex rel. Office of State Bldgs.*, 2012-1238, p. 13 (La. 4/5/13), 113 So.3d 175, 185-86 (alterations in original) (internal citations omitted).

In their brief, the Carreros note they offered Ms. Levitan's expert opinion that the extension of the handrail at the point of transition to ground level would have provided stability for someone with balance issues who held onto the handrail. As succinctly stated by the First Circuit, however, the jury could "accept or reject in whole or in part any [expert] opinion." *Naquin v. Church Mut. Ins. Co.,*

2024-0303, p. 23 (La. App. 1 Cir. 12/30/24), 403 So.3d 1188, 1209. Likewise, the jury had broad discretion in deciding the effect and weight accorded to the expert testimony. *Id.* In so doing, the jury could "accept or reject any expert's view" and could "even . . . substitut[e] its own common sense and judgment for that of an expert witness" if warranted by the evidence as a whole. *Id.* Even having heard from Ms. Levitan about an extension of the handrail being useful to someone like Mrs. Carrero, the jury concluded there was no unreasonable danger. The law affords the jury the latitude to reach such a conclusion.

Moreover, the jurors also had other information and evidence before them that could explain their verdict. In particular, the jurors heard conflicting evidence about the location of Mrs. Carreros' fall. According to Elizabeth, Mrs. Carrero fell at the bottom of the ramp; but, according to Mr. Votier, Mrs. Carrero was in the middle of the ramp. The jurors heard nothing definitive about the reason Mrs. Carrero fell. In fact, Elizabeth testified, "I [do not] know why she fell"; and the medical records generated after the fall contained the notation that one of Mrs. Carrero's daughters reported that Mrs. Carrero "tripped over her own foot." That is, the Carreros did not undeniably establish the handrail was the reason for Mrs. Carrero's fall. The jurors also heard about Mrs. Carreros' medical records, which called into question Ann's testimony about Mrs. Carrero's history of falls and stability while walking. In this latter regard, Elizabeth confirmed Mrs. Carrero used a cane in the years preceding the subject accident.

The Carreros further contend that "[t]his Court previously held that the defective condition in the handrail 'was not open and obvious.'" As already discussed extensively, this Court did not unequivocally issue such a holding in the prior Carrero *Opinion*, but instead ruled there remained genuine issues of material

24

fact in this regard. The Carreros also note that "[i]t was undisputed in this case that the handrail that Mrs. Carrero was using when she fell was non-compliant with applicable building codes and ADA safety standards." To this end, the Carreros argue that while this is "not dispositive" under Louisiana law, it "alone is sufficient for a finding that a condition was unreasonably dangerous." Again, the Carreros cite to this Court's prior *Carrero* Opinion; but, as we have already explained, that Opinion never held violations of building codes or safety standards rendered a condition unreasonably dangerous but instead related to the issue of constructive knowledge. As support for this contention, the Carreros also cite to another Fourth Circuit case, *Perniciaro v. Liberty Mutual Insurance Co.*, 2002-0889 (La. App. 4 Cir. 5/20/02), 820 So.2d 600. Nowhere in the *Perniciaro* Opinion did this Court hold that building code and safety standard violations meant a condition was unreasonably dangerous. In fact, that case merely involved whether the defendants could introduce evidence of the fault or negligence of architects, contractors, and others involved in the original construction of a shopping center. The Carreros misconstrue the foregoing jurisprudence. As explained previously, violations of codes and safety standards alone do not establish a condition is unreasonably dangerous. *Handy*, 2012-135, p. 9, 97 So.3d at 545.

Even if we may have weighed the evidence differently sitting as the trier of fact, a review of the record in its entirety does not support a reversal of the jury's verdict. The jury's finding that the defective handrail was not unreasonably dangerous is reasonable in light of the record viewed in its entirely. The Carreros' fifth and final assignment of error is without merit.

**DECREE**

For the foregoing reasons, we affirm the trial court's April 8, 2024 judgment, which adopted the jury's verdict and dismissed the Carreros' claims against Mandina's with prejudice.

**AFFIRMED**